## VEITIA et al. v. FORTUNÁ ESTATES.

(Circuit Court of Appeals, First Circuit.  December 29, 1917.)

### No. 1224.

1. INJUNCTION ⬅⬤➡143(2)—PRELIMINARY INJUNCTION—NOTICE TO ADVERSE PARTY.

The notice to adverse parties required by equity rule 73 (198 Fed. xxxix, 115 C. C. A. xxxix) before the granting of a preliminary injunction may be dispensed with as to nonresident parties, who are not within the jurisdiction of the court, and have not yet been served with process, and where they are represented by a resident agent, who in their behalf is committing the acts sought to be enjoined, who is made a party and is before the court, and against whom the injunction runs.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 315.]

2. WATERS AND WATER COURSES ⬅⬤➡247(2)—SUIT FOR INJUNCTION—INDISPENSABLE PARTIES.

To a suit to enjoin the taking of water from a stream under a contract made by defendants with the Porto Rican Commissioner of the Interior on behalf of the people of Porto Rico, and for which said people were to receive payment, as conflicting with prior grants and a prior contract made by complainant with the Commissioner, the people of Porto Rico are not only a necessary, but an indispensable, party.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 314.]

3. TERRITORIES ⬅⬤➡32—SUIT AGAINST PORTO RICO—JURISDICTION—WAIVER OF IMMUNITY.

While the government established in Porto Rico by Organic Act April 12, 1900, c. 191, 31 Stat. 77, is of such nature as to come within the general rule exempting a government, sovereign in its attributes, from being sued without its consent, if it voluntarily becomes a party to a suit involving its interests, either in its own courts or in the federal court for the district of Porto Rico, on application of its Attorney General, this is consent on its part waiving such immunity, which consent and waiver cannot afterward be withdrawn; and if the suit is in the federal court, the government will also be held to have accepted the jurisdiction of that court.

[Ed. Note.—For other cases, see Territories, Cent. Dig. § 25.]

4. APPEAL AND ERROR ⬅⬤➡329—PARTIES—INTERVENTION OF NEW PARTIES.

Only parties to the appeal record can be recognized as parties by the appellate court, and briefs filed by one not a party to such appeal will be considered only as addressed to court by amicus curiæ.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1836.]

⬅⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. WATERS AND WATER COURSES ⬤⇒247(2)—SUIT FOR PRELIMINARY INJUNCTION
  —SUFFICIENCY OF SHOWING.
    Where defendants, in compliance with the requirement of a contract
  made with the Porto Rican Commissioner of the Interior, reconstructed
  an intake from a river, and through it for several months had received
  water from the river, for which they paid the government in accordance
  with the contract, a court could not justifiably disturb such situation by
  a preliminary injunction at the instance of one asserting rights under an
  earlier contract with the same authorities, except upon the showing of a
  clear right of complainant to the water in question.
    [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
  § 314.]

Appeal from the District Court of the United States for the District
of Porto Rico; Peter J. Hamilton, Judge.

Suit in equity by the Fortuna Estates against Rafaela Castillo Veitia
and others. From an order granting a preliminary injunction, defend-
ants appeal. Reversed.

Charles Hartzell of San Juan, Porto Rico, for appellants.

Francis E. Neagle and Rounds, Hatch, Dillingham & Debevoise, all
of New York City, for appellee.

Samuel T. Ansell, of Washington, D. C. (Howard L. Kern, of New
York City, on the brief), for the People of Porto Rico.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH,
District Judge.

DODGE, District Judge. This is a controversy about water rights.
Fortuna Estates, a New York corporation, owning and operating four
sugar-producing estates in Porto Rico supplied from the Jacaguas
river, filed this bill against the appellants (hereinafter called defend-
ants) April 7, 1916. The defendants named therein are eight in num-
ber. Seven of them, according to the bill, were variously interested in
another sugar-producing estate called "Boca Chica," also supplied from
the same river, but from a point higher up thereon. The remaining
defendant is described as the attorney in fact of two among the other
defendants, and as the manager or administrator of a sugar mill on
the "Boca Chica" estate, and it is alleged that said estate is devoted
to the growing of sugar cane intended for grinding at said mill.

The bill charges all the defendants with diverting to their estate wa-
ter from the river rightfully belonging to the plaintiff's estates. An
order that the defendants show cause on April 17, 1916, why a pre-
liminary injunction should not issue against them was made upon the
filing of the bill. The record does not distinctly show any service of
this order upon any of them. The omission, however, does not appear
important for any purpose with which we are now concerned.

Three of the defendants answered the bill, April 17, 1916, and the ap-
plication for preliminary injunction was heard on the same day upon
the pleadings and upon affidavits filed by the plaintiff and by the three
defendants thus before the court. May 19, 1916, the court issued the
preliminary injunction from which this appeal is taken. It ordered the
three defendants who had answered to desist from further diversion

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
  240 F.—17

of the water claimed by Fortuna Estates, and to restore to their original condition certain intakes recently opened, through which, as the court held, the water in question was being wrongfully diverted.

1. The assignments of error to be first considered assert that the injunction was issued without having necessary parties defendant before the court.

It appears from the pleadings that of the three defendants who were before the court and enjoined, as above, only one could have taken any actual part in the diversion of water complained of. This was the defendant Parra, the alleged attorney in fact of two among the defendants and the alleged manager or administrator of their sugar mill. As to him, the bill further alleged (paragraph 17) that as such attorney in fact he had entered into a pretended contract on behalf of his two principals with the people of Porto Rico, through the Commissioner of the Interior, authorizing the defendants to take the water claimed by Fortuna Estates, a copy whereof was annexed as Exhibit B; that he had been notified, as the representative of the other defendants, that said contract infringed the plaintiff's rights; that the defendants had, nevertheless, persisted in having the contract approved by the Executive Council of Porto Rico, had had certain specified intakes reconstructed, so as to obtain delivery of said water, and had taken or were threatening to take it according to the contract. Parra's separate answer expressly admitted that he was attorney in fact of the two defendants named in the bill as his principals, and also that he was manager and administrator of the sugar mill referred to. It further admitted that he had made the contract for and on behalf of the two defendants whom he represented as attorney. It then alleged that he had no personal interest or title to any of the properties involved in the controversy, and, except as above, no other or different interest in the matters involved. It denied no allegation made in the bill, all the averments whereof, except as to value or amount of damage, are to be deemed confessed, so far as Parra is concerned, according to rule 30. This includes the allegation that he had reconstructed the intake. referred to, so as to admit the water claimed to have been diverted.

The two defendants for whom Parra had been acting were Gustavo M. Cabrera and Emilia V. Henna. The former, according to the bill, was lessee in possession of an undivided half interest in the "Boca Chica" estate, and the latter was "usufructuary" of the other undivided half interest, which is understood to mean that she had a life estate therein. Neither was a resident of Porto Rico and neither, as below appears, was before the court when the injunction issued.

As to the two remaining defendants who were before the court, both were residents of Porto Rico and had been duly summoned; but it appeared from the bill that neither was in possession or had control of the "Boca Chica" property. The undivided half interest under lease to Gustavo M. Cabrera belonged, according to the bill, to them and another defendant, nonresident and not summoned before the court. Neither was a party to or named in the contract with the people of Porto Rico, nor did the bill allege that Parra was attorney for them, or either of them.

The owners of the other undivided half interest in the property, held, as above, for her life by Emilia V. Henna, were, according to the bill, said Gustavo M. Cabrera and three other defendants named, all, like him, nonresidents in Porto Rico, and not before the court.

The court had thus before it when it issued the injunction only (1) Parra, representing as above the two nonresident defendants having possession or control of the property at the time, and who represented them, so far as appears, only for the purpose of executing the above contract and the further purpose of managing the sugar mill on the property; (2) two defendants, whose only alleged connection with the estate was that they owned various undivided reversionary interests in it, without either possession or control at the time; and these three defendants, their agents, servants, etc., were the only parties enjoined.

Every other defendant, including the two then in possession and control of the property, was resident in England and not before the court. There had been no attempt to summon them by service on Parra as their local representative. On the day it heard the application for preliminary injunction, April 17, 1916, the court ordered notice to them all by publication and mailing; but this notice was not returnable until 90 days after that date, a period which had not expired when the injunction issued. The injunction, as has been stated, did not run against any of them.

[1] As to Parra's principals, it is true that, in general, an injunction is not allowed nor a decree rendered against an agent whose principal is not made a party. But it is also true that this is a rule that may be dispensed with, if the principal is not subject to the jurisdiction of the court. Osborn v. U. S. Bank, 9 Wheat. 738, 842, 843, 6 L. Ed. 204. We see no reason why it may not be dispensed with when, as in this case, the principal is nonresident and not, or not yet, before the court. If it justifiably found reason to believe that the diversion agreed on in the contract and effected by Parra was wrongful, we cannot say that the court was obliged to leave him free to maintain it, until his nonresident principals had appeared or could be notified. See Brown v. Pacific Mail, etc., Co., Fed. Cas. No. 2,025, 5 Blatchf. 525. The court held that rule 73 (198 Fed. xxxix, 115 C. C. A. xxxix) does not require notice to absent defendants, and that since Parra was actually controlling for them the properties to which the water was being diverted, and had personally effected the diversion on his principals' behalf, notice to him was sufficient for the purpose of a preliminary injunction, such as it issued. We find no error in these rulings.

The two nonresident defendants in whose employ Parra had been acting were the only defendants immediately interested in the diversion of water complained of, or in the above contract, Exhibit B, annexed to the bill. To this contract neither the two resident defendants other than Parra who were before the court nor any of the nonresident defendants except his two employers were parties. If any of these persons were proper parties defendant in the suit, none of them were necessary parties, and we do not consider the fact that some of them were not before the court sufficient ground for holding that there was

error in proceeding in their absence. No interest of theirs appears to be directly involved in any issue then before the court.

The contract, Exhibit B, was made with Parra on behalf of his two principals, by the Porto Rican Commissioner of the Interior on behalf of the people of Porto Rico as party of the second part, which party therein agreed that, in consideration of $6 per day, to be paid by Parra or his principals, said party to the second part would deliver "excess" water to their canal, called the Maturi Canal; a different charge being fixed for water delivered at a rate less than three acre feet per day. The contract further authorized and required them to reconstruct the intake of their said canal, so as to facilitate the delivery of such excess water. The contract was to terminate upon the formation of a permanent irrigation district. The above were its leading provisions. The bill charges that the use of this intake thus agreed on deprives the plaintiff, at a lower intake leading to its lands, called the Aruz intake, of water to which it is entitled "by reason of concessions, royal decrees, user, and contracts."

The plaintiff's rights to water from said river are based, according to its bill, in part at least upon an earlier contact between it and the then acting Commissioner of the Interior, made August 26, 1914, also on behalf of the people of Porto Rico, whereby said people had agreed to deliver daily to the plaintiff specified quantities of water for each of its four estates at various intakes specified, and also, while the agreement should remain in force, "in addition to" the amounts of water specified as above, "water which may be available" at one of the intakes already named, known as the Aruz pumping station—

"to the extent that such taking shall not deprive any owners or users of subsisting water rights, or concessions, * * * of the water to which such owners or users may be entitled, either by virtue of such water rights or concessions,' or by virtue of any agreement or agreements in regard thereto entered into or to be entered into by them with the people of Porto Rico: Provided, however, that should [said people] at any time undertake the development and utilization of the surplus waters of this part of [said river], this right shall be understood to be limited to a maximum usage of 3.86 second feet."

The above provisions are quoted from the third paragraph of said contract. They are the provisions especially relied on by the plaintiff.

No payment by the plaintiff was agreed on as the consideration for these deliveries of water to it, but the agreement was stated to have been made in order to determine a fair equivalent for all rights in the water in the river previously enjoyed by the plaintiff or its predecessors, which rights were expressly not to be prejudiced by the contract— in view of possible interruption thereof by plans for storing the water of the river then contemplated by the Porto Rican government. The contract recited that the plaintiff's anterior rights were claimed by it to exist by virtue of prior royal decrees, concessions, and user. As described in the contract, these were rights appurtenant to each of its four estates, respectively, to take specified quantities of water for use upon each of them, and also rights to take what is called "torrential water," with which this case is not concerned. No mention is made in the contract of any prior right to take what is called surplus or ex-

cess water, being water other than torrential, remaining in the river after satisfying all rights to regular specified deliveries. If the plaintiff had any such prior right, it was superseded while the contract was in force, and could be asserted only to the extent that the terms of the contract permitted the taking of such water.

[2] The appellants contend that the people of Porto Rico, or its Commissioner of the Interior, neither of whom is made a party by the bill, were, one or the other, necessary parties, and that to proceed in the absence of both was error.

We think this contention well founded. So far as the plaintiff's alleged rights prior to its above contract with said people were important, they were rights acquired by user against said people, or existing under concessions to which it was a party as successor to the Spanish government. Its rights under the contract were rights granted directly by said people. It could claim no rights as riparian owner merely. See Trujillo et al. v. Succession of Rodriguez (heretofore decided in this court) 233 F. 208, 147 C. C. A. 214. The water which both the plaintiff and those defendants who were operating the "Boca Chica" estate were taking when the bill was filed was then being delivered to them respectively by said people, in pursuance of agreements on its behalf through the proper authorities. To interfere with the agreed deliveries to the defendants was also to interfere with the agreed payment to be made therefor to said people. Interference with the defendants' intake as reconstructed to receive said agreed deliveries was interference with structures which the people had expressly required and authorized the defendants to erect for the purpose of receiving the excess water to be received and paid for as above. The invalidity of the grant made and the authority given by said people to the defendants, asserted by the plaintiff, could be found by the court to exist only in case it adopted the construction claimed by the plaintiff, but disputed by the defendants, of certain provisions in said people's prior grant to the plaintiff. The construction contended for materially affected the administration of the Irrigation Service maintained by said people. No such decree or injunction as the bill sought could therefore be made or issued, without materially and injuriously affecting interests of said people, inseparable from those in controversy between the parties. This made said people not only a necessary, but an indispensable, party to the suit.

Not only did the plaintiff's bill omit to make said people a party in any form, but no notice to it of the pendency of the suit appears to have been given. The learned District Judge stated in his opinion that, if the Porto Rican government should seek to intervene, its application would be carefully considered, but that any opportunity for such intervention in the District Court was afforded does not appear. Whether it or its commissioner could be made a party without its consent the court regarded as doubtful. If to do so was in fact impossible, we think the case was one in which the District Court could not properly proceed. Gregory v. Stetson, 133 U. S. 579, 10 Sup. Ct. 422, 33 L. Ed. 792; Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499; Hyams v. Old Dominion Co., 209 Fed.

808, 126 C. C. A. 532; Wm. A. Rogers v. Nichols, 224 Fed. 415, 417, 139 C. C. A. 643. But, as will appear, dismissal of the bill without prejudice on this ground will not be the necessary result.

[3] The government established in Porto Rico by the Organic Act (31 Stats. 77) "is of such nature as to come within the general rule exempting a government, sovereign in its attributes, from being sued without its consent." Porto Rico v. Rosaly, 227 U. S. 270, 273, 33 Sup. Ct. 352, 57 L. Ed. 507. If, however, it voluntarily becomes a party to a suit involving its interests, upon the application of its Attorney General, this is consent on its part, waiving such immunity, which consent and waiver cannot afterward be withdrawn. Porto Rico v. Ramos, 232 U. S. 627, 34 Sup. Ct. 461, 58 L. Ed. 763. If said government so becomes a party to a suit in the federal District Court for Porto Rico, it will be held to have also accepted the jurisdiction of that court, though its legislative consent has been given only to suits against it in its own courts. Richardson, Treasurer, v. Fajardo, etc., Co., 241 U. S. 44, 36 Sup. Ct. 476, 60 L. Ed. 879.

On behalf of the Attorney General of Porto Rico there was presented to this court, when the case was reached here for argument, what was entitled an "Information on Behalf of the People of Porto Rico." In this it was alleged, among other things, that by the injunction which the District Court had issued the property of said people is "sequestered to said Fortuna Estates," the administration of its irrigation system hindered, and the revenues therefrom impaired, to the irreparable injury of said people. The document concluded by asking that it be filed and considered by this court; that the District Court be directed to dissolve the injunction forthwith, and for other and further relief; that ten days be allowed for printing said information, serving it on the parties to the case, and preparation of a brief and argument in its support; also that the hearing be meanwhile continued.

The continuance of the hearing requested was refused, but the "information" and a brief in support thereof were allowed to be filed and printed. This brief has been considered, to the extent below stated, as has also a further brief later filed in reply to the plaintiff's brief at the argument.

[4] In both these briefs the people of Porto Rico are styled "interveners," but no leave to intervene in the case has ever been given them. Only the parties in the appeal record can be recognized as parties by this court. Harrison v. Nixon, 9 Pet. 483, 9 L. Ed. 201; The William Bagaley, 5 Wall. 377, 18 L. Ed. 583; Marsh v. Nichols, 120 U. S. 598, 7 Sup. Ct. 704, 30 L. Ed. 796; Blatchford v. Newberry, 100 Ill. 484. The so-called "information" contains allegations of fact not found in the record, which the plaintiff has never had an opportunity to answer, because they were not made in the court of first instance. Obviously the plaintiff could neither be required nor allowed to answer them here, nor can they affect our determination of the issues properly before us in the case. As to the briefs filed as above, we have treated them, so far as they apply to the issues presented by the appeal record, as arguments addressed to the court by an amicus curiæ. In no other aspect could we properly have given them any consideration.

The Attorney General's application, however, may be regarded as sufficiently indicating that the people of Porto Rico is prepared in this case to waive its immunity against suit in a federal court, to the extent of becoming, for some purposes at least, an intervening party, and· that it desires to be heard as such. The District Court is, as matters now stand, the only court which can afford it the opportunity of being so heard. Its right to be so heard in that court, upon suitable application there, seems to admit of no question. See Percy Summer Club v. Astle (C. C.) 110 Fed. 486. Due opportunity for such application, given before the injunction issued, does not appear, as has been stated, from the record. The District Court will therefore be directed to afford such an opportunity in any further proceedings.

2. The defendants contend, under other assignments of error, that the plaintiff had established no right in itself to the water in question sufficient to justify the issue of any preliminary injunction against them; still less the issue of a mandatory injunction requiring them to close intakes which they had constructed and were then maintaining and using under the requirements and by the authority of said people of Porto Rico, through its proper officers.

An affidavit submitted by the defendants showed without dispute that, after the execution of the last-mentioned contract and before the plaintiff's bill was filed, not only had the authorized and directed reconstruction of defendants' intake been completed, but deliveries of excess water had been received and paid for by them according to the contract. Such deliveries continued to be received until February 8, 1916, after which date there was not water enough in the river to make them, nor even to make the full regular deliveries required by all existing concessions. The defendants' intake remained ready to receive the agreed excess water when there should again be any for them to receive. This was the situation existing when the plaintiff's bill was filed, on the 7th of the following April. The defendants had thus been exercising, for some months, rights granted them by public authorities having power to make such grants, in a manner recognized by such authorities as within the grant made.

[5] Aside from the above question of parties, the court could not justifiably disturb such a situation by injunction at the instance of a party asserting rights under an earlier contract with the same public authorities, unless the earlier contract clearly appeared to have covered what they were permitting the defendants to receive under their subsequent grant.

It cannot be said that the plaintiff's contract of August 26, 1914, plainly vested in the plaintiff such rights to excess water as it now claims. The terms of the third paragraph, whereon the plaintiff relies, do not, in express terms, grant any right to excess or surplus water. Neither expression is used, and the burden was on the plaintiff to establish the construction for which it contends as the true construction, in view of all the other provisions of the contract and the circumstances therein referred to.

According to the plaintiff, the true meaning of this third paragraph is that all the water in that part of the river bordering the Fortuna Estates, extending, as appears, some five miles in all above the Aruz.

intake, not required under existing concessions to fulfill regular deliveries to be made above or below, was to be allowed to come down, without diversion, to that intake, and was to belong there to the plaintiff alone, so long as it does not exceed 3.86 second feet. If, as there was evidence to show, such water never exceeds 2.50 second feet, the plaintiff claims the whole of it. Of course, if such a claim is established, there could be no excess water remaining to be granted by or delivered under any later contract.

The plaintiff has attempted to satisfy us that the construction for which it contends is in' accordance with the clear meaning of the paragraph in question. But it appears that when the contract was made the Irrigation Department was engaged with plans for storing the upper waters of the river, such as might well result in considerably increasing the available quantity of excess or surplus waters. Section 13 of the Public Irrigation Law, as amended in 1913 (Laws of Porto Rico 1913, p. 38), had authorized the sale or lease of excess water by the Commissioner of the Interior, and was presumably before the minds of the parties to the contract at the time, as well as the prospect that action under it might well become expedient. With this in view, it is reasonable to suppose that any intent to grant the plaintiffs all excess water up to a quantity so much exceeding that available in the river at the time would have been expressed in unmistakable terms, as might easily have been done. The paragraph in question, as it stands, seems to us at least reasonably capable of a construction which, instead of giving the plaintiff exclusive water rights in excess of its regular deliveries, so extensive as to enable it to appropriate all water in the river other than torrential, for a time extending so far into the future, enables it only to appropriate such proportion of the excess water as present or future agreements with others then enjoying concessionary rights might leave available at the plaintiff's Aruz intake, but not in any event to appropriate more than 3.86 second feet.

We do not find it necessary to determine the true construction of the above paragraph, or to discuss at length the various arguments for or against the construction contended for by the plaintiff, because neither that construction nor any other was adopted by the District Court, whose determination of the meaning of the words "water which may be available there," and all questions as to the principles which should govern in interpreting either the plaintiff's or the defendant's contract, was expressly reserved until the final hearing. These questions should be left unprejudiced until passed upon by the District Court at a hearing wherein the people of Porto Rico has opportunity to be heard.

But if the District Court, as appears to have been the case, was not prepared to find an apparently clear right in the plaintiff to the water in question, we think it erred in issuing its injunction. Without such a finding there could be no proper ground for treating the defendants' apparent existing right as inferior to the right asserted by the plaintiff, and for suspending its exercise in the plaintiff's favor, during the pendency of the suit.

3. The assignments of error not fully covered by what has been said do not require separate notice in view of the above conclusions. It may be stated, however, that those numbered 11, 12, and 13 assume that there have been findings or rulings by the District Court which do not appear from the record to have been in fact made.

The order of the District Court granting the preliminary injunction is reversed, and the case is remanded to that court, with directions to afford the people of Porto Rico an opportunity to intervene, and for further proceedings thereafter not inconsistent with this opinion, and the appellants recover their costs of appeal.