## KINGDOM OF ROUMANIA v. GUARANTY TRUST CO. OF NEW YORK.

### (Circuit Court of Appeals, Second Circuit. January 11, 1918.)

### No. 163.

1. INTERNATIONAL LAW ⬤➔10—SOVEREIGNTY—IMMUNITY OF SOVEREIGN FROM SUIT.

The bringing of an action by a foreign nation in a court of the United States to recover a deposit placed to its credit in a bank is not a waiver of its immunity as a sovereign from suit by other parties, and the court is without jurisdiction to permit the defendant by interpleader to substitute as defendant another party claiming a lien on the deposit as a creditor of the plaintiff, but who alleges no facts which would make it a trust fund.

2. INTERNATIONAL LAW ⬤➔10—SOVEREIGN—IMMUNITY FROM SUIT—WAIVER.

A foreign nation at war which makes contracts in the United States for supplies or equipment for its armies does not thereby divest itself of its sovereign character and become subject to suit as a private individual.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Kingdom of Roumania against the Guaranty Trust Company of New York. From an order permitting an interpleader of Morris Arditti, plaintiff brings error. Reversed.

For opinion below, see 244 Fed. 195.

White & Case, of New York City (Vermont Hatch and Joseph M. Hartfield, both of New York City, of counsel), for plaintiff in error.

Frank M. Patterson, of New York City (Franklin H. Mills, of New York City, of counsel), for defendant in error.

Morris & Samuel Meyers, of New York City, for Morris Arditti.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. May 12, 1916, one Morris Arditti began an action in the Supreme Court of the State of New York against the Guaranty Trust Company and the Kingdom of Roumania claiming to recover damages against the Kingdom of Roumania in the sum of $101,200 for breach of contract and a lien upon funds of the Kingdom of Roumania in the possession of the trust company to the extent of

$56,500 in addition. He alleged that he had entered into a contract February 23, 1916, with the Kingdom of Roumania for 200,000 pairs of shoes for the Roumanian army to be paid for out of a credit of $547,009 to be established by the Kingdom of Roumania in the Commonwealth Trust Company of Boston and out of another credit of 200,000 French francs through the Bank of Marmorasch, Blank & Co. of Bucharest, on delivery of the shoes; that he on his part was required to deposit and did deposit with the Kingdom of Roumania the equivalent of $14,000 in money and a bond for $42,500 of the said Bank of Marmorasch, Blank & Co. as a guaranty of his faithful performance, to be returned to him if the Kingdom of Roumania failed or refused to carry out the contract; that the Kingdom of Roumania did not establish the said credits nor carry out the contract to the damage of the plaintiff in the sum of $101,000 plus the cash deposit and bond aforesaid aggregating $56,500. As to the latter sum the complaint alleged:

(13) "Upon information and belief, that the Kingdom of Roumania, in violation of its agreement to hold and retain the said fund separate and apart from its general funds and as a trust fund, wrongfully withdrew the said fund from its said treasury into which it had been deposited as aforesaid, and wrongfully transferred and delivered the said fund in such a manner that the said fund after passing without consideration through the hands of several intermediaries, duly came into the hands of the defendant Guaranty Trust Company of New York, without consideration therefor having been paid by the said Guaranty Trust Company of New York, and that the said fund is now in the possession of the defendant Guaranty Trust Company of New York, and in its control."

It will thus be seen that the only moneys of the plaintiff alleged to have been wrongfully withheld by the Kingdom of Roumania are the $14,000, there being no allegation that anything had been paid upon the bond of $42,500, and there is not a fact stated either in the complaint or in Arditti's affidavit showing that the $14,000 or any part thereof is or ever was in the possession of the Guaranty Trust Company.

July 11, 1917, the Kingdom of Roumania, which had not been served with process in the action at law in the state court, brought suit in the District Court of the United States for the Southern District of New York against the Guaranty Trust Company to recover the sum of $73,433.55 with interest from May 12, 1917, being the balance of a deposit account opened with it on that day.

July 23d, the Guaranty Trust Company obtained an order upon the Kingdom of Roumania and Arditti to show cause why Arditti should not be substituted as defendant in its place and be discharged upon payment into court of the sum of $73,433.55 with interest.

August 13th the District Judge entered an order which was subsequently resettled as of that date granting the motion upon payment by the trust company into court of the said sum with 2 per cent. interest. from May 12th; that being the amount usually allowed by trust companies to depositors:

"Ordered, that said motion be and the same hereby is granted, and that on payment by the defendant, Guaranty Trust Company of New York, into this

court, to credit of this action, of the sum of seventy-three thousand and four hundred thirty-three and 55/100 ($73,433.55) dollars, with interest on deposit at the rate of two per cent. per annum within five (5) days from the entry of this order, Morris Arditti be interpleaded herein and substituted as defendant in this action in the place and stead of the Guaranty Trust Company of New York, the defendant above named, and that upon making such payment as aforesaid this action be discontinued as against the defendant Guaranty Trust Company of New York, and that said Guaranty Trust Company of New York thereupon be discharged from all liability as to said sum of seventy-three thousand four hundred thirty-three and 55/100 ($73,433.55) dollars, and interest, or any part thereof, to either the plaintiff above-named or said Morris Arditti.

"And it is further ordered that the plaintiff have leave and is hereby required to serve upon said Morris Arditti, within twenty (20) days after service upon it of a copy of this order, a supplemental complaint setting forth such additional facts as may be necessary to show that it has a right to recover the sum of $73,433.55 as against Morris Arditti, with leave to serve an amended supplemental complaint within twenty (20) days thereafter, and that said Morris Arditti may appear and plead thereto or make such motion as he may be advised within twenty (20) days after the service upon him of a copy of said supplemental complaint, with leave to said Morris Arditti to serve an amended pleading within twenty (20) days thereafter.

"And it is further ordered that if the plaintiff neglect to serve its supplemental complaint, as hereinbefore provided, the said Morris Arditti may apply to the court for an order dismissing the action and making disposition of the sum so paid into court.

"And it is further ordered that if Morris Arditti does not appear and plead in this action within twenty (20) days after service upon him by plaintiff of a copy of this order, together with a copy of the complaint herein, and supplemental complaint, the plaintiff may apply, on proof of such default, for an order that the money so deposited be paid over to it."

A writ of error is taken to this order principally upon the ground that the court had no jurisdiction to make it, the Kingdom of Roumania being a sovereign state and immune from suits in the courts of this country.

[1, 2] The District Judge, admitting this immunity, proceeded on the theory that the Kingdom of Roumania had waived its privilege by bringing suit against the trust company to recover the balance owed it and that therefore the trust company could bring in a claimant against the Kingdom of Roumania as defendant in its place. It is true that Arditti in his affidavit states that the $56,500 above mentioned was deposited by him with the Kingdom of Roumania at Bucharest and that it has come into the hands of the trust company. But this is a bare allegation unsupported by the statement of a single fact. The amount owed by the trust company to the Kingdom of Roumania is not the result of any actual deposit of funds or securities but of a credit opened here through bankers in Paris in September, 1915. We do not think that a reasonable basis is laid for an interpleader even between private persons. Pouch v. Insurance Co., 204 N. Y. 281, 97 N. E. 731, Ann. Cas. 1913C, 1191.

It is the long-accepted law that a foreign sovereign cannot be sued nor his property attached in the courts of a foreign friendly country without his consent. Schooner Exchange v. McFadden, 7 Cranch, 117, 3 L. Ed. 287; Hassard v. U. S. of Mexico, 29 Misc. Rep. 511, 61 N. Y. Supp. 939, affirmed 173 N. Y. 645, 66 N. E. 1110. Nor can the

defendant when sued by a foreign sovereign avail himself of any counterclaim or set-off except perhaps a set-off arising out of the same transaction. Under no circumstances can he obtain an affirmative judgment. People v. Dennison, 84 N. Y. 272.

The court below relied on several decisions to show that its immunity had been waived by the Kingdom of Roumania in this case which we do not think applicable.

In Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780, a fund of $100,000 had been deposited by a railroad company with the treasurer of the city of Boston, payable to the general treasurer of the state of Rhode Island. The assignees in bankruptcy of the railroad company brought suit in equity against the general treasurer of Rhode Island and the city of Boston and its treasurer, praying that they might be enjoined, the former from receiving and the latter from delivering to him the said fund and that it might be delivered to the complainants. A demurrer on the ground that a suit against its general treasurer was a suit against the state of Rhode Island, of which the court had no jurisdiction by virtue of the eleventh amendment to the Constitution, was overruled and an interlocutory decree passed ordering the fund to be paid into the registry of the court. Subsequently the state of Rhode Island was allowed to intervene and claim the fund in the registry. The obvious difference between that case and the present is that there was a specific and identified fund to be disposed of and that the state intervened in a suit already pending between private parties to claim it.

In Porto Rico Co. v. Ramos, 232 U. S. 627, 34 Sup. Ct. 461, 58 L. Ed. 763, there was pending an action of ejectment for specific land between private parties, and when the same was reached for trial the people of Porto Rico, by their Attorney General, asked leave to intervene and be made a party defendant. The court granted the motion and directed the plaintiff to amend his complaint and make the people of Porto Rico a party defendant. The people of Porto Rico demurred to the amended complaint on the ground that being a sovereign it was immune from suit at the instance of private individuals. The court held that if the suit had been originally against the people of Porto Rico it could have relied upon this immunity under Porto Rico v. Rosaly, 227 U. S. 270, 33 Sup. Ct. 352, 57 L. Ed. 507, but, having been admitted to a pending suit upon its own motion, it had waived its privilege.

In Richardson v. Fajardo Sugar Co., 241 U. S. 44, 36 Sup. Ct. 476, 60 L. Ed. 879, the sugar company, in accordance with the provisions of a law of Porto Rico, brought suit against the treasurer of Porto Rico to recover taxes paid under protest. The Attorney General of Porto Rico appeared and made full answer to the complaint, but eight months after the institution of the suit objected that Porto Rico, being a sovereign and having consented by its Legislature to be sued only in its own courts, could not be sued in the United States courts. The court held that Porto Rico, having solemnly appeared and answered the complaint, could not thereafter deny the court's jurisdiction.

In Veitia v. Fortuna Estates, 240 Fed. 256, 153 C. C. A. 182, a suit

was pending as to water rights between private parties. Porto Rico by its Attorney General asked leave to intervene to protect its own paramount interests. This was held to be a waiver of immunity from suits except in its own courts and objection on that ground was over-ruled.

These authorities arose on a quite different state of facts. In the present case there is no specific fund. The relation between the Kingdom of Roumania and the Guaranty Trust Company being the usual one of debtor and creditor existing between banks and depositors, we are clear that the action by the Kingdom of Roumania to recover a debt owed it by the Guaranty Trust Company was not a waiver of its immunity as a sovereign to be sued by other parties. If this be not so, the immunity can be frittered away either by interpleader or attachment in any case where a foreign sovereign undertakes to collect a debt owed it.

There is an additional intimation in the opinion of the District Judge that the Kingdom of Roumania had been engaged in business in this country and had thereby taken on the character of a private individual. Bank of the United States v. Planters' Bank of Georgia, 9 Wheat. 904, 906, 6 L. Ed. 244; South Carolina v. United States, 199 U. S. 437, 463, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737. It seems to us manifest that the Kingdom of Roumania in contracting for shoes and other equipment for its armies was not engaged in business, but was exercising the highest sovereign function of protecting itself against its enemies.

The District Court was without jurisdiction to make the order, and it is therefore reversed.