## THE JANE PALMER. THE SINGLETON PALMER. FRANCE & CANADA S. S. CORPORATION v. FRENCH REPUBLIC.

(District Court, S. D. New York. December 28, 1920.)

1. **Admiralty ⟨⟩36—Affirmative relief cannot be awarded on answer.**

In admiralty, a decree awarding affirmative relief in favor of a claimant or respondent cannot be made in the original suit; but the answer can go only so far as may reduce or completely set off the award in favor of libelant.

2. **Admiralty ⟨⟩36—Set-off must arise out of same transaction.**

In a suit in rem for damage to cargo, a claim for detention of the vessel by libelant, after discharge on completion of the voyage cannot be made the subject of a set-off or counterclaim, although arising out of the same contract of affreightment.

3. **International law ⟨⟩10—Sovereign nation as litigant subject to law and rules of court.**

A sovereign, which comes into an admiralty court of the United States, does so subject to the substantive law and the procedure of such court, and since it could not avail itself of an arbitration clause in a contract to oust the jurisdiction of the court, neither can such a clause be availed of against it.

In Admiralty. Suits by the French Republic against the schooner Jane Palmer and against the schooner Singleton Palmer; the France & Canada Steamship Corporation, claimant and cross-libelant. On exceptions to answer and cross-libel. Exceptions sustained.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (William H. McGrann, of New York City, of counsel), for libelant.

Patterson, Eagle, Greenough & Day, of New York City (J. Culbert Palmer and C. D. Francis, both of New York City, of counsel), for claimant and cross-libelant.

MAYER, District Judge. The libel in the first cause of the title is in rem and alleges that on or about April 16, 1917, there were shipped on board the schooner Jane Palmer 956 bales of bleached cotton linters, the property of libelant, in good order, to be carried to St. Nazaire, France, and there to be delivered to libelant in like good order, in consideration of an agreed rate of freight, and under the bill of lading issued by the agent of the Jane Palmer after the shipment had been placed on board; that during May, 1917, the Jane Palmer arrived at St. Nazaire and there made delivery of the goods in a damaged condition, due to the negligence (in certain respects set forth) of the Jane Palmer; that by reason of the premises libelant sustained damages in the sum of $54,482.02.

The answer denies the essential allegations of the libel, and alleges inter alia that, after the Jane Palmer arrived at St. Nazaire, libelant delayed the discharge of the cotton for 48 days, but that libelant has paid claimant demurrage for the delay. Up to this point it appears that the voyage upon which it is alleged libelant's goods were damaged had ended. The controversy thus far is solely with respect to damage to cargo on a particular voyage.

For a cross-libel, counterclaim, and set-off claimant alleges, inter alia, that about April 5, 1917, claimant entered into a contract of affreightment with libelant, which included a bill of lading therein specified (said contract being marked Exhibit A), whereby libelant agreed to furnish, to be transported from United States ports to French ports, a total of 100,000 tons of certain commodities, which claimant agreed to ship within a period specified on sailing vessels which flew the American flag, and claimant agreed to deliver the commodities to libelant in France. One of the provisions of the contract, Exhibit A, is as follows:

"The War Administration [libelant] agrees to assume the war risk on vessels engaged in the transportation of this merchandise by the France & Canada Steamship Corporation. The value of vessels will be calculated at the rate of £10—0-0 (sterling) per ton dead weight."

Reference is then made to seven schooners belonging to claimant, one of which was the Jane Palmer, and all of which were engaged in transporting merchandise to France under the contract. It is then alleged that libelant in connection with the prosecution of the war—

"detained and compelled said vessels to remain at said French ports for the periods hereinafter specified, waiting for libelant's war vessels to convey them out to sea and protect them from damage, destruction or capture by Germany or her allies."

The Jane Palmer was compelled by libelant to remain in the outer roads at St. Nazaire from July 6, 1917, to July 21, 1917, and the damage for this delay was $11,277.18. It will be noted that the discharge of the cargo of the Jane Palmer was completed some time on July 5th, i. e., 48 days from May 18th, while the delay in starting the voyage back to the United States did not begin until July 6, 1917. In other words, the damage for the delay complained of arose out of a voyage intended to be undertaken after the completion of the voyage on which libelant's merchandise is said to have been damaged.

Libelant then sets forth damage of the same kind for periods specified in respect of the delay of the other six schooners. The total claimed for the damage for delay in regard to the seven schooners is the sum of $133,972.93. The theory of this part of the pleading is that libelant breached that part of the contract quoted supra.

The same facts are then repeated and the same amount is claimed, upon the theory that libelant in and by its contract, Exhibit A, as an implied term thereof, gave claimant the right to send its vessels engaged in transporting the merchandise to and bring them from the French ports whenever the vessels were ready and able to sail, and that libelant, in violation of its agreement, detained and compelled the vessels in question to remain at the French ports for the periods set forth.

As a further answer, claimant refers to article XIII of the contract, Exhibit A, reading:

"All disputes relative to execution of present contract must be submitted to the arbitrage of the Chamber of Commerce of New York."

Claimant alleges that it was and is willing and has offered to submit its claim of $133,972.33 and libelant's claim for damage to the car-

go in accordance with the arbitration provision above quoted, but that libelant has refused and still refuses to submit these claims to arbitration, as provided by the contract.

The libel and answer in respect of the Singleton Palmer are the same in regard to theory and differ only in details. The damage in respect of the Singleton Palmer is put at $22,659.97. The voyage on which the cargo was damaged and the voyage which was delayed by failure to furnish convoys bear a similar relation as those in the case of the Jane Palmer.

[1] It is, of course, well settled that in admiralty a decree awarding affirmative relief in favor of a claimant or respondent, as the case may be, cannot be made in the original action. The answer can go only so far as may reduce or completely set off the award in favor of libelant. This principle is too well known to need citation. The question, then, is whether the facts alleged in the answer constitute any set-off whatever.

Libelant's position is that the actions are in rem, founded on a maritime lien on the specific vessels arising out of the ordinary relationship of ship and cargo, and libelant has not pleaded the contract between the parties. Claimant, however, has pleaded the contract and insists that all questions arising under the contract and, in any event, growing out of the voyage of the vessels employed to carry out the contract, arise out of the same transaction. It may well be that the contention of libelant is too narrow, and that by simply avoiding the setting up of the contract it could not prevent a set-off which arose out of the same transaction.

[2] The mere fact, however, that there are breaches of the same contract, occurring unrelated to the cause of action alleged, does not ipso facto characterize such breaches as arising out of the same transaction. It must be remembered that, in the admiralty, set-off is confined within a restricted scope. The more liberal expansion in respect of counterclaim and set-off in equity (equity rule 30, 201 Fed. v, 118 C. C. A. v) at common law and by statute has not developed in the admiralty, either by statute or rule, or by the decision of courts, and the law, in this regard, is where Mr. Justice Story left it in Willard v. Dorr, 3 Mason, 161, 29 Fed. Cas. 1277, No. 17,680 (1823).

There is some language in some of the cases which, if read irrespective of the context, might suggest that any claim arising out of the same contract might be pleaded by way of set-off or might be pleaded in a cross-libel. Thus, in The Highland Light (D. C.) 88 Fed. 296, the language is used:

"Any cause of action in favor of a party called upon to defend against the original libel founded upon the same contract, or arising out of the same transaction, is a counterclaim, which may be set up by the cross-libel."

In that case, and in the long list of cases cited by both sides in the controversy at bar, analysis will show that, wherever a state of facts is considered upon the question of set-off, the facts, in order to constitute a set-off, must arise clearly out of the same transaction, and that an independent cause of action which springs into existence because of

a breach of the contract in some entirely different respect does not constitute the proper subject-matter of a set-off.

In the case at bar, the damage due to the detention of the Jane Palmer and the other vessels was in no way related to the transaction concerned in the voyage upon which it is alleged that libelant's cargo was damaged. This alleged damage was due to a state of facts entirely separate and distinct from those concerned with the damage to the cargo complained of. I have carefully examined the cases, and I am unable to find any case which, in principle, justifies the set-off here sought to be interposed, or which justifies a departure from the well-settled principles of admiralty law in this regard.

The exceptions, therefore, so far as relate to this subject-matter of the answers, are sustained.

In respect of the cross-libel a motion is made by the cross-libelant for security under admiralty rule 53 (29 Sup. Ct. xliv). Cross-respondent has excepted on various grounds, including the ground that the cross-libel fails to set forth facts constituting a cause of action. In view of the conclusion just stated in respect of the allegations of the answer, the same principle will apply to the cross-libel, and the exception in that regard is sustained. The Dove, 91 U. S. 381, at page 385, 23 L. Ed. 354; Bowker v. United States, 186 U. S. 135, at page 140, 141, 22 Sup. Ct. 802, 45 L. Ed. 1090; 1 C. J. 1322.

This determination renders academic a discussion of the question of sovereignty, as well as a discussion of the question as to whether cross-respondent has waived its special appearance and is to be regarded as having appeared generally.

[3] There remains for consideration only the matter of the arbitration clause. In regard to this clause, claimant advances an interesting contention. The law as stated in Aktieselskabet Korn-Og Foderstof Kompagniet v. Rederiaktiebolaget Atlanten, 250 Fed. 935, 163 C. C. A. 185, and The Eros, 251 Fed. 45, 163 C. C. A. 295, is not questioned, but claimant argues as follows:

"In this case the French Republic, being a sovereign nation, was immune from suit without its own consent. The French Republic has the right to bring suit against the France & Canada Steamship Corporation in this jurisdiction to adjudicate its claims; but, as the French Republic has agreed to arbitrate any claim which the France & Canada Steamship Corporation might have against it arising out of the contract, and as the courts admittedly have no jurisdiction to adjudicate any claim of the France & Canada Steamship Corporation against the French Republic without its own consent, the courts are not ousted of jurisdiction, because they never had jurisdiction. Consequently, it is submitted that, the reason of the rule failing, the rule itself fails."

The answer to this contention is that a sovereign friendly power has no more right to oust the court of jurisdiction than has a private party. If such a sovereign power seeks our courts, it must comply with our substantive law and our procedure and it is protected only to the extent of the immunity discussed in Kingdom of Roumania v. Guaranty Trust Co., 250 Fed. 341, 162 C. C. A. 411. It must, for instance, give security for costs. Honduras v. Soto, 112 N. Y. 310, 19 N. E. 845, 2 L. R. A. 642, 8 Am. St. Rep. 744. It could not raise the point

against a set-off, otherwise appropriate, which might be pleaded against it, and therefore the arbitration clause cannot be availed of by or against it to oust our courts of jurisdiction.

This exception is therefore sustained.

Orders in conformity with this opinion may be submitted on three days' notice.