### THE SAO VICENTE. THE MURMUGAO. ROSE v. TRANSPORTES MARITIMOS DO ESTADO.

(Circuit Court of Appeals, Second Circuit. January 25, 1922.)

1. **Courts** &#8596;405(5)—**Appeal from decree overruling claim of foreign sovereign cannot be taken to Circuit Court of Appeals.**

    A claim by a foreign sovereign of ownership of the libeled vessel raises a jurisdictional question, so that an appeal from a decree for libelant cannot be taken to the Circuit Court of Appeals.

2. **Courts** &#8596;279—**Answer held not sufficient to raise question of ownership of vessel by foreign sovereign.**

    An answer to a libel filed by the vice consul general of a foreign republic, which alleged that the vessel was owned by a department of the sovereign foreign government, but did not allege that the ownership of the department was the ownership of the sovereign itself, and which was based only on information and belief of the vice consul general, founded on records at the port of New York and communications from the agents of the steamship, does not sufficiently raise the question of want of jurisdiction because the vessel is owned by a foreign sovereign government.

3. **International law** &#8596;10—**Immunity of sovereign is waived by general appearance.**

    The immunity of a sovereign from suit is susceptible of waiver, and is lost when the sovereign enters a litigation with a general appearance, so that a claim of a libeled vessel and stipulation for value, which does not assert ownership by a foreign sovereign, waives the claim of immunity.

Appeal from the District Court of the United States for the Southern District of New York.

Separate libels in admiralty by the Tietjen & Lang Dry Dock Company against the steamship Sao Vicente, of which the Transportes Maritimos do Estado was claimant, and by Maxwell Rose, doing busi-

ness as the Battery Operating Company and Whitehall Stevedoring Company against the steamship Murmugao and against the Transportes Maritimos do Estado. Decree for libelant in each case, and claimant or respondent appeals. On motions to dismiss the appeals. Motions granted.

Certiorari granted 258 U. S. ——, 42 Sup. Ct. 272, 66 L. Ed. ——.

F. Dudley Kohler, of New York City, for appellant.

Crowell & Rouse, of New York City, for appellee Tietjen & Lang Dry Dock Co.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for appellee Rose.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The first motion made in this group of cases was a motion on behalf of libelant appellee in the case of the Sao Vicente to dismiss the appeal. This motion was granted, and we filed a brief memorandum reading:

"This motion to dismiss is granted. The sovereign immunity can be waived, and has been waived in this case."

Thereafter claimant appellant petitioned for a rehearing, the petition was granted, a rehearing was had, and the court adhered to its previous decision. It was agreed between the proctors that all the cases should follow our decision in the Sao Vicente Case. After our decision on rehearing, our attention was called to the opinion of the Appellate Division of the Supreme Court for the First Department in De Simone v. Transportes Maritimos do Estado, and, as it was suggested that our decision was not in harmony with that of the learned Appellate Division, we concluded to point out the views entertained by us more fully than we did in our brief memorandum.

In the Sao Vicente Case, the libel was brought by a New Jersey Corporation engaged in the business of ship repairing and having its shipyard at Hoboken. The libel, which was verified April 14, 1921, alleged that between March 25 and April 14, 1921, at the port of New York, libelant, at the instance and request of the steamship Sao Vicente, its officers, etc., furnished materials and supplies in the form of work, labor, and services in docking and repairing the steamship, amounting in all to $69,000, and that no part of this amount had been paid. Libelant prayed that the usual process should issue. After the vessel had been libeled, the claim of the owner was filed in usual form. It read:

"And now Transportes Maritimos do Estado, owner of the steamship Sao Vicente, etc., intervening for its interest in the said steamship Sao Vicente, etc., appears before this honorable court and makes claim to the said steamship, etc., as the same are under attachment in this court, * * * and the said Transportes Maritimos do Estado avers that it was in possession of the said steamship Sao Vicente at the time of the issuing of process herein, and that it is the true and bona fide owner of the said steamship Sao Vincente, and that no other person is the owner thereof. Wherefore it prays to defend accordingly.                    Transportes Maritimos do Estado,
                    "By C. B. Richards & Co.,
                        "Leonard W. Simmons, a Partner."

This claim was verified by Simmons and acknowledged before a notary; the acknowledgment reading, in part:

"He acknowledged to me that he executed the same for and on behalf of said firm, as agent for Transportes Maritimos do Estado."

The stipulation for value, filed the same day, was likewise in usual form, providing in the condition clause:

"If the claimant herein and American Surety Company of New York, of 100 Broadway, borough of Manhattan, in the city of New York, and by occupation a surety company, the stipulation undersigned, shall abide by all orders of the court, interlocutory or final, and pay the amount awarded by the final decree rendered by this court, or by any appellate court, if an appeal intervene, with interest, then this stipulation to be void; otherwise, to remain in full force and virtue.
"Transportes Maritimos do Estado,
"C. B. Richards & Co., Agents,
"By Leonard W. Simmons, a Partner."

It is not disputed that the usual stipulation for costs was also filed. Upon filing the claim of the owner, and the stipulation for value, and the stipulation for costs, the owner procured the release of the vessel from arrest, and the vessel is no longer in these waters, and hence is no longer in this jurisdiction.

It will be noted that up to this time there was not even the remotest suggestion that the vessel belonged to a foreign sovereign. On May 27, 1921, an answer was verified by Jose Rocha Prista, who swore that he was the vice-consul general for the government of Portugal, with an office in the city of New York, and that the vessel—

"as I am informed and believe, is owned and operated by the Transportes Maritimos do Estado, a department of the republic of Portugal, a sovereign foreign government; * * * the sources of my information and the grounds of my belief as to the matter stated to be alleged upon information and belief are records at the port of New York and communications received from the agents of the steamship Murmugao. The reason this verification is not made by the respondent is that the respondent is owned by the Transportes Maritimos do Estado, a department of the republic of Portugal, and is not within the jurisdiction of the United States."

The answer alleged, inter alia:

"That the steamship Sao Vicente is a Portuguese vessel flying the flag of Portugal, owned and operated by Transportes Maritimos do Estado. which is now and at the times mentioned in the libel was a department of the sovereign foreign government of Portugal, a government now at peace with the United States and allied with the United States, * * * and that said vessel is engaged in the public service of Portugal, and that the matters set forth in said libel relate to the management, control, and operation of said vessel outside the jurisdiction of the United States, and, in accordance with the provisions of the Merchants' Shipping Acts and international comity, the settlement of these matters should be left to Portuguese consul at the port of New York.

"Respondent objects to, and protests against the assumption of jurisdiction by this court, and alleges that it is a vessel owned and operated by Transportes Maritimos do Estado. a department of the sovereign foreign government of Portugal as aforesaid, and that it cannot be sued in any of the courts of the United States without its consent, and that this action is in substance and effect an action against the government of Portugal, and as such is not maintainable against this respondent."

To this answer libelant duly excepted, the exceptions were sustained by Judge Knox, the usual interlocutory decree was entered, and later a special commissioner reported that a stipulation as to damages had been agreed to by the respective proctors, and on the basis of that stipulation the special commissioner ordered that the amount due libelant was $67,955.69, with interest from April 12, 1921. Thereafter on October 4, 1921, a routine final decree in usual form was entered.

[1] 1. Under the Carlo Poma Case, 255 U. S. 219, 41 Sup. Ct. 309, 65 L. Ed. 594, we think that the decree was not appealable to this court.

· [2] 2. In any event, the jurisdictional question sought to be raised by the answer was not properly raised. The vice consul general does not assert that the foreign sovereign government owns the vessel, but merely alleges that it is owned by a department of the sovereign foreign government, and, so far as this record discloses, there is nothing in the answer to show that the ownership of the department is the ownership of the sovereign itself. Indeed, the vice consul general does not make any assertion on behalf of the republic of Portugal, but merely states in his affidavit that he is informed and believes that the vessel is owned by a department of the government of the republic of Portugal, and that this information, according to the vice consul general's affidavit, was obtained, not from the sovereign under whom he is serving, but from some undescribed records at the port of New York and communications from the agents of another steamship, which we happen to know from the other cases is alleged to be owned by this same department. Even if it were to be held, notwithstanding The Pesaro, 255 U. S. 216, 41 Sup. Ct. 308, 65 L. Ed. 592, that the question of jurisdiction could be raised by the vice consul general, it is not properly raised upon this record.

[3] 3. Finally, if we were to pass by the questions already considered, appellant is confronted with a line of cases, of ruling authority, which have now clearly held that the immunity of the sovereign, being susceptible of waiver, is lost when the sovereign enters a litigation with a general appearance. In Beers v. State of Arkansas, 20 How. 527, 15 L. Ed. 991, in speaking of the consent of the state of Arkansas, the court said:

"And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it."

But this expression must be read in connection with the particular facts of that case, as is illustrated by the following extract from Clark v. Barnard, 108 U. S. 436, at page 447, 2 Sup. Ct. 878, at page 883 (27 L. Ed. 780):

"The first question for determination on this appeal is that of jurisdiction. raised first by the demurrer and afterwards by the answer of Clark, general treasurer of the state of Rhode Island, on the ground that the suit was in effect brought against a state by citizens of another state, contrary to the Eleventh Amendment to the Constitution of the United States. We are relieved, however, from its consideration by the voluntary appearance of the

state in intervening as a claimant of the fund in court. The immunity from suit belonging to a state, which is respected and protected by the Constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit, otherwise well brought, in which a state had sufficient interest to entitle it to become a party defendant, its appearance in a court of the United States would be a voluntary submission to its jurisdiction. while, of course, those courts are always open to it as a suitor in controversies between it and citizens of other states. In the present case the state of Rhode Island appeared in the cause and presented and prosecuted a claim to the fund in controversy, and thereby made itself a party to the litigation to the full extent required for its complete determination. It became an actor as well as defendant, as by its intervention the proceeding became one in the nature of an interpleader, in. which it became necessary to adjudicate the adverse rights of the state and the appellees to the fund, to which both claimed title. The case differs from that of Georgia v. Jesup, 106 U. S. 458, where the states expressly declined to become a party to the suit, and appeared only to protest against the exercise of jurisdiction by the court."

The underlying principle of Clark v. Barnard has been consistently followed. Gunter v. Atlantic Coast Line R. Co., 200 U. S. 284–289, 26 Sup. Ct. 252, 50 L. Ed. 477; Porto Rico v. Ramos, 232 U. S. 627,. 34 Sup. Ct. 461, 58 L. Ed. 763; Richardson v. Fajardo Sugar Co., 241 U. S. 44, 36 Sup. Ct. 476, 60 L. Ed. 879; Veitia et al. v. Fortuna Estates, 240 Fed. 256, 262, 153 C. C. A. 182. As succinctly put by Mr. Justice McKenna in the Ramos Case, supra:

"The immunity of sovereignty from suit without its consent cannot be carried so far as to permit it to reverse the action invoked by it, and to come in and go out of court at its will. the other party having no right of resistance to either step."

The two other cases, while differing in some details, are the same in principle on the questions of appealability and jurisdiction as the Sao Vicente Case.

The motions to dismiss the appeals are granted.