# BALTIMORE AND POTOMAC RAILROAD COMPANY *v.* FIFTH BAPTIST CHURCH.

## SAME *v.* SAME.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Nos. 121, 122. Argued December 18, 19, 1890. — Decided January 5, 1891.

At the trial of an action of tort upon a plea of *nul tiel corporation*, evidence that the plaintiff, after filing a defective certificate of incorporation under a general corporation law, acted for years as a corporation, and recovered a judgment as such in a similar action against the defendant without any objection made to its capacity to sue, is competent and sufficient to prove it a corporation *de facto*, and therefore entitled to maintain this action.

Misnomer of a corporation plaintiff is pleadable in abatement only, and is waived by pleading to the merits.

*Baltimore & Potomac Railroad* v. *Fifth Baptist Church*, 108 U. S. 317, approved.

At a trial by jury in a court of the United States, the presiding judge may express his opinion upon matters of fact which he submits to their determination.

In an action for the continuance of a nuisance, the jury cannot, for the purpose of reducing the damages, take into consideration judgments recovered for the earlier maintenance of the same nuisance.

THE case is stated in the opinion.

*Mr. Enoch Totten* for plaintiff in error.

*Mr. J. J. Darlington* and *Mr. Martin F. Morris* (with whom was *Mr. G. E. Hamilton* on the brief) for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

These two actions are in the nature of actions on the case for the continuance of a nuisance to the plaintiff's use and enjoyment of its house of public worship, by the noise, smoke, cinders, ashes and vapors from the defendant's adjoining engine house, repair shop and locomotive engines, and by the

obstruction of access to the plaintiff's building by the defendant's unlawful use of its side track in front of it.

The plaintiff heretofore brought in the court below a similar action against the defendant for maintaining the same nuisance from April 1, 1874, to March 22, 1877, and at the trial thereof on the general issue recovered a verdict and judgment for $4500, which was affirmed by this court, and the amount thereof, with interest, was paid by the defendant. *Baltimore & Potomac Railroad* v. *Fifth Baptist Church*, 108 U. S. 317.

The present actions were brought and tried separately; one of them was brought March 24, 1880, for damages since March 24, 1877, and resulted on March 24, 1886, in a verdict and judgment for $6000; and the other was brought June 11, 1883, for damages since June 11, 1880, and resulted on April 22, 1886, in a verdict and judgment for $7000. In each of these two actions there were the following proceedings:

The declaration was headed "The Fifth Baptist Church of Washington, D.C., by its Trustees *v.* The Baltimore and Potomac Railroad Company;" and alleged that the plaintiff was a body corporate in the District of Columbia, under and by virtue of the general corporation act of May 5, 1870, c. 80, § 2. 16 Stat. 99, 100; Rev. Stat. D. C. §§ 533–544.

The defendant pleaded in bar: 1st. "That the said plaintiff was not at the time of the commencement of this suit, and never was, a body corporate or politic, as set forth and alleged in and by said declaration." 2d. Not guilty. The plaintiff joined issue on these pleas.

The plaintiff, upon the issue presented by the first plea, and to prove its user of corporate rights, offered the following evidence, which was admitted against the defendant's objection and exception:

1st. The original of the following certificate of incorporation, signed and sealed by the six persons named therein:

"We, C. C. Meador, George M. Kendall, John N. Henderson, Samuel M. Yeatman, James C. Deatley and Samuel S. Taylor, of Washington City in the District of Columbia, do hereby certify that we have been duly elected 'Trustees of the Fifth Baptist Church of Washington City, D.C.' (commonly

called ' the Island Baptist Church '), and that this certificate is made, signed and sealed for the purpose of obtaining corporate rights and privileges for the said 'Fifth Baptist Church,' a religious society worshipping at present in their church edifice on D Street South, between Four-and-a-half and Sixth Streets in said city of Washington, under the provisions of an act of Congress approved May 5, 1870, entitled 'An act to provide for the creation of corporations in the District of Columbia by general law.'

"In testimony whereof we hereunto set our hands and affix our seals this twenty-fourth day of August in the year of our Lord one thousand eight hundred and seventy-one."

Annexed to this paper were a notary public's certificate of its acknowledgment on the same day by these six persons; an affidavit of one of them, dated May 1, 1885, that the statements in the certificate of incorporation were true; a memorandum of the recorder that the paper was recorded September 5, 1871; and another memorandum that it was recorded May 1, 1885.

2d. A recorder's copy of the certificate of incorporation, acknowledgment and affidavit, as recorded May 1, 1885.

3d. That in the year 1871 it became necessary for the plaintiff, in order to complete its church edifice, to borrow money upon a mortgage of its land; and that to promote this object, and upon the recommendation of its finance committee, a special meeting was called, and was held on July 2, 1871, at which the church (which had been known as the Island Baptist Church) resolved to become incorporated under the name stated in the above certificate of incorporation, and elected as its trustees the six persons named therein, and fixed their term of office at three years; and thereupon that certificate was prepared and signed by the trustees and recorded.

4th. Three deeds, respectively dated September 26, 1871, September, 18, 1872, and November 10, 1874, from the six persons named in the above certificate of incorporation, describing themselves as "trustees of the Fifth Baptist Church of Washington City, D.C." reciting its incorporation under the general corporation act, and its resolution authorizing them

to execute the deeds, and conveying the church building and land, in trust and by way of mortgage, to secure the payment of various sums of money.

5th. Two deeds of release of the same building and land, dated November 9, 1874, from the grantees to the grantors in the first two of the trust deeds aforesaid.

6th. The record of the judgment in the former action between these parties.

The plaintiff also introduced, without objection, evidence tending to show " that its present church edifice was begun about the year 1866 and was completed at a cost of about $22,000, exclusive of the ground; that the property is worth about $30,000, and has been occupied and used by the plaintiff's society or congregation since the year 1867 as its place of religious worship; and that during the period covered by this suit its actual church membership, consisting, as in all Baptist churches, of persons who have been baptized after a profession of faith, numbered about four hundred persons, exclusive of the persons attending services there as members of the congregation who were not members of the church."

It may be that, as held by the court below in 4 Mackey, 43, at a former stage of one of these cases, the original certificate of incorporation, not stating the date of election or the term of office of the trustees, nor supported by affidavit, as required by statute, was not sufficient of itself to prove the plaintiff's existence as a corporation, either *de jure* or *de facto;* and that the adding of an affidavit to the certificate, and recording it anew, since the commencement of these actions, could not avail the plaintiff.

But the certificate of incorporation, as originally drawn up, taken in connection with the other evidence now introduced, and especially the record of the former action in which this plaintiff as a corporation recovered judgment against this defendant without any objection being taken to the plaintiff's capacity to sue, is clearly competent and sufficient, as between these parties, to prove that the plaintiff had in good faith attempted to legally organize as a corporation, and had long acted as such, and was at least a corporation *de facto*, which

is all that is necessary to enable it to maintain an action against any one, other than the State, who has contracted with the corporation, or who has done it a wrong. *Bank of United States* v. *Dandridge*, 12 Wheat. 64, 72; *Conard* v. *Atlantic Ins. Co.*, 1 Pet. 386, 450; *Chubb* v. *Upton*, 95 U. S. 665; *Williamsburg Ins. Co.* v. *Frothingham*, 122 Mass. 391; *Searsburgh Turnpike Co.* v. *Cutler*, 6 Vermont, 315; *Cincinnati &c. Railroad* v. *Danville & Vincennes Railroad*, 75 Illinois, 113; *Stockton & Linden Co.* v. *Stockton & Copperopolis Railroad*, 45 California, 680.

It is objected that the evidence admitted, if sufficient to prove that the plaintiff was a corporation, did not prove that it was the corporation which brought this action; because the evidence was that the corporate name was "The Fifth Baptist Church of Washington, D.C.," whereas the action, as stated in the declaration, was brought by "The Fifth Baptist Church of Washington, D.C., by its Trustees."

It may well be doubted whether the words "by its Trustees," as here used, are part of the name of the plaintiff. They may have been inserted, like "by attorney" or "by next friend," to indicate by whose agency, and not in whose behalf, the action is brought. By the general corporation act, both the title in real estate, and the right to sue, are vested in the trustees "by the name and style assumed as aforesaid," that is to say, in the name and behalf of the corporation. Act of May 5, 1870, c. 80, § 2, 16 Stat. 99, 100; Rev. Stat. D.C., §§ 534, 539, 540.

But if these words in the declaration can be taken as part of the plaintiff's name, the most that is shown is a mistake in that name. While *nul tiel corporation*, or that the plaintiff is not and never was a corporation, is a good plea in bar, because it goes to show that the plaintiff can never maintain any action whatever; yet *misnomer*, or mere mistake in the name of a corporation plaintiff, which does not affect its capacity to sue in the right name, is pleadable in abatement only, and is waived by pleading to the merits. Bro. Ab. Misnomer, 73; *Society for Propagating the Gospel* v. *Pawlet*, 4 Pet. 480, 501; *Christian Society* v. *Macomber*, 3 Met. 235, 237; Gould Pl. c. 5, § 79.

Upon the issue of not guilty, the plaintiff and the defendant respectively further introduced evidence similar to that given at the trial of the former action, and stated in 108 U. S. 318–320.

The court, at the plaintiff's request, gave the following instructions to the jury, to each of which the defendant excepted:

"If the jury find from the evidence that the church property of the plaintiff, described in the declaration, was acquired and held as a place of religious worship by said plaintiff before the engine house and repair shop of the defendant were built, and that said engine house and repair shop, during the three years immediately preceding the filing of the declaration, as they were used by the defendant, rendered it impossible for the plaintiff to occupy its building with comfort as a place of public worship; that the hammering in the shop, the rumbling of the engines passing in and out from the engine house, the blowing off of steam, and the smoke from the chimneys, with its cinders, dust and offensive odors, created during said period a constant and serious disturbance of the religious exercises of the church; that the noise was frequently so great that the voice of the pastor while praying or preaching could not be heard; that the chimneys of the engine house were, during the three years embraced in this suit, allowed to continue lower in height than the windows of the church, and that smoke and cinders from them were thrown into the church in such quantities as to cover the seats with soot and soil the garments of the worshippers; that disagreeable odors, added to the noise, smoke and cinders, rendered the place uncomfortable as a place of worship and unsuitable for the purposes to which it was devoted; then the plaintiff is, as a matter of law, entitled to recover, and it is the duty of the jury to measure in damages the extent of the injury suffered by the plaintiff from these various grievances during the three years immediately preceding the bringing of this suit."

"In the estimate of damages, the plaintiff is entitled to recover because of the inconvenience and discomfort caused to the congregation assembled, if you find such inconvenience

and discomfort to have been occasioned, thus tending necessarily to destroy the use of the building for the purposes for which it was erected and dedicated. The congregation had the same right to the comfortable enjoyment of its house for church purposes, that a private gentleman has to the comfortable enjoyment of his own house; and it is the discomfort and annoyance in its use for those purposes for the three years covered by this suit which is the primary consideration in allowing damages. There may be no arithmetical rule for the estimate of damages. There is, however, an injury, the extent of which the jury may measure."

It is objected to these instructions, that the evidence did not warrant the assumption that the use of the defendant's engine house and repair shop rendered it "impossible" for the plaintiff to occupy its building with comfort; or that the noise, smoke and cinders created a "constant" disturbance; or that the voice of the preacher, while praying and preaching, "could not be heard;" or that the smoke and cinders were thrown into the church in such quantities as to "cover the seats with soot;" or that there had been inconvenience and discomfort caused to the congregation, "tending necessarily to destroy" the use of the building for the purposes for which it was erected and dedicated.

But all the expressions objected to were taken from the opinion of this court in the former case, and are open to no just exception in matter of law. 108 U. S. 329, 335. And if they can be construed as expressing an opinion upon the facts, the expression of such an opinion is within the discretion of the judge presiding at a trial by jury in any court of the United States, and, when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error. *Vicksburg & Meridian Railroad* v. *Putnam,* 118 U. S. 545; *United States* v. *Philadelphia & Reading Railroad,* 123 U. S. 113; *Lovejoy* v. *United States,* 128 U. S. 171.

The only other point relied on arises upon the defendant's request for an instruction to the jury, in the second of the present actions, that if they should be satisfied from the evi-

dence that the plaintiff was entitled to a verdict, then in estimating damages they might take into consideration the payment by the defendant to the plaintiff of the judgment in the former action, and the judgment against the defendant in the first of the present actions. The court refused so to instruct the jury, except with this qualification : " But the fact of such previous recoveries against the defendant is not admissible for the purpose of reducing the amount of damages, if any, to which the jury may find the plaintiff is justly entitled in the present action." The defendant excepted to this instruction, as well as to the refusal to give the instruction requested.

The instruction, as given, was quite favorable enough to the defendant. The design of the request, as avowed in the brief of its counsel, " was to give the jury an opportunity to equalize the verdicts, should they deem either of the other two either too high or too low, and to do justice according to their notions."

But the jury in the last case had nothing to do with the assessment of damages in either of the earlier cases. The three actions were brought to recover damages for injuries during distinct and successive periods of three years each. The former action was not for damages which were the necessary or natural effect of the erection of the defendant's structures, which might be recovered once for all; but it was for the injury suffered before the commencement of that action by reason of the wrongful use of those structures. And each of the present actions was brought, not for damages consequential upon the injury for which the plaintiff had already recovered judgment, but for damages caused by the new injury from the continuance of the nuisance, which could only be recovered in each action for the three years before its commencement. The judgments recovered in the former action and in the first of the present actions could not therefore have any effect to bar the last action, or to diminish the measure of the damages to be recovered by it. *Troy* v. *Cheshire Railroad,* 3 Foster, 83, 102 ; *Warner* v. *Bacon,* 8 Gray, 397, 402, 405, 406 ; *Fowle* v. *New Haven & Northampton Co.,* 107 Mass. 352, 355, and 112 Mass. 334.

The cases at bar afford a good illustration of the rule of law, and of its application, as stated by Blackstone: " Indeed every continuance of a nuisance is held to be a fresh one; and therefore a fresh action will lie, and very exemplary damages will probably be given, if, after one verdict against him, the defendant has the hardiness to continue it." 3 Bl. Com. 220.

If the damages assessed by the jury in either of these two actions were thought excessive, the defendant's only remedy was by motion for a new trial in the court below, and that has already been resorted to without success. 5 Mackey, 269.

*Judgments affirmed.*