DEXTER & CARPENTER, Inc., v. KUNGLIG JARNVAGSSTYRELSEN et al.

No. 356.

Circuit Court of Appeals, Second Circuit.

July 14, 1930.

706

Haight, Smith Griffin & Deming, of New York City (Charles S. Haight, Wharton Poor, and Laszlo Kormendi, all of New York City, of counsel), for appellant.

Covington, Burling & Rublee, of Washington, D. C., and Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Edward B. Burling, of Washington, D. C., William C. Cannon, of New York City, and Porter R. Chandler, of Buffalo, N. Y., of counsel), for W. Bostrom, Envoy Extraordinary, etc.

Shearman & Sterling, of New York City (Carl A. Mead and Otey McClellan, both of New York City, of counsel), for appellees, the National City Bank of N. Y. and A/B Svenska Amerika Linien.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Kunglig Jarnvagsstyrelsen, also known as the Royal Administration of the Swedish State Railways, filed a complaint in the District Court for the Southern District of New York, in 1922, describing itself as a corporation under the laws of Sweden, and sought recovery of $125,000, claiming breach of contract by appellant for the sale of coal. The National City Bank of New York was made a party defendant because funds were on deposit in that institution to cover the payment of the coal purchased. An answer was filed to this complaint, also a counterclaim in which the appellant sought affirmative relief by way of money damages for breach of the contract for the purchase of the coal. All parties now agree that the Swedish State Railways was not in fact a corporation, as alleged in the complaint, and in no way a distinct entity from the Swedish government; that the Railways were part of the Swedish government and were owned solely by Sweden. In Sweden it was not subject to the laws specially applicable to corporations and economic societies of the kingdom of Sweden. All its officials are appointed by the Swedish government and operate the railways under its direction. The net revenues are paid to the Exchequer, which is the same office to which taxes and other such revenues of the Swedish government must be and are delivered. In reply to the counterclaim, a replication was filed, and a motion was made to dismiss the counterclaim because the railways were an agency of the government and the counterclaim was not maintainable against it without its consent. This motion was overruled and the replication stricken out. Kunglig Jarnvagsstyrelsen, etc., v. Dexter & Carpenter, Inc. (D. C.) 300 F. 891. The mere allegation of agency, unsupported by any claim of immunity proceeding directly from the sovereign and unvouched for by our own government, was held to be insufficient.

The trial of the action resulted in a judgment dismissing the complaint, and a verdict was rendered by the jury for the plaintiff on the counterclaim. On appeal, the judgment in favor of the plaintiff on the counterclaim was reversed and the dismissal of the complaint was affirmed (C. C. A.) 20 F.(2d) 307; certiorari was denied, 275 U. S. 497,

48 S. Ct. 121, 72 L. Ed. 392. On the second trial, a judgment was rendered for the appellant for $411,203.72, which this court affirmed. 32 F.(2d) 195. An application for reargument was made, and a certificate, executed by the Swedish minister, stating the railways were not a corporation but an organic part of the Swedish government, and advancing the claim of immunity, was filed. Reargument was denied. When certiorari was again applied for, a suggestion through the Solicitor General, as to the petitioner's legal status and claim of immunity was presented to the Supreme Court by the Swedish minister, Ex parte Muir, 254 U. S. 522, 532, 41 S. Ct. 185, 65 L. Ed. 383, and the petition was denied, 280 U. S. 579, 50 S. Ct. 32, 74 L. Ed. 629.

When the case was here last, 32 F.(2d) 195, 199, this court, referring to the claim that " 'the plaintiff is an agency of the friendly foreign sovereign government of Sweden'; that the counterclaim is in effect a suit against such government, and 'as such is not maintainable in this court without the consent of the plaintiff'; and that the plaintiff does not consent to the determination of the counterclaim," said, at page 200 of 32 F.(2d) :

"This is not an appearance by the kingdom of Sweden as a party to the suit, nor the assertion of immunity by that kingdom. It is an assertion by plaintiff corporation of a claim of sovereign immunity. But the assertion of the sovereign's immunity cannot be made by a private party litigant. In Ex parte Muir, 254 U. S. 522, 41 S. Ct. 185, 65 L. Ed. 383. * * *

"The reasons for requiring an accredited representative of a foreign government to present its claim of immunity are as potent when the claim is founded upon an assertion that a corporation defendant is an agency of the sovereign as when it is founded upon the assertion that an arrested vessel is the government's property. In either case the court presumptively has jurisdiction and may proceed unless the sovereign objects. Consequently, when a private corporation is sued at law, we do not think it is enough for an attorney to appear for it and say it is a governmental agency, and in his opinion immune from suit."

Therefore, there is a valid unsatisfied judgment against the Swedish State Railways as a corporation. But, as said by the judge below, "The outstanding feature of the case * * * is the fact that the Swedish Government has been in this suit from the beginning."

The government of Sweden represented its Railway Administration to be a corporation and voluntarily entered its suit in the jurisdiction of the District Court, and failed to file a proper plea of immunity from suit, answered the counterclaim, and litigated until eventually defeated, and now protests, in its present plea of immunity, against the effort of the judgment creditor to realize the fruits of its litigation by the medium of a writ of execution. It never amended or corrected the plaintiff's name.

The question presented is whether it may now intervene, appearing specially, and seek immunity. In the absence of consent expressed or implied, the court will not take jurisdiction of a suit against a sovereign or permit its property to be attached. Berizzi Bros. Co. v. S. S. Pesaro, 271 U. S. 562, 46 S. Ct. 611, 70 L. Ed. 1088; Oliver American Trading Co. v. Mexico, 5 F.(2d) 659 (C. C. A. 2); The Maipo, 259 F. 367 (D. C. N. Y.). But, where a sovereign invokes the jurisdiction of the court, appears voluntarily, and pleads to a counterclaim interposed, contesting the merits of the respective claims until judgment is rendered against it, the court has jurisdiction, and there is both a waiver of immunity and a consent to the exercise of the jurisdiction. Richardson v. Fajardo Sugar Co., 241 U. S. 44, 36 S. Ct. 476, 60 L. Ed. 879; Porto Rico v. Ramos, 232 U. S. 627, 34 S. Ct. 461, 58 L. Ed. 763; The Sao Vicente, 295 F. 829 (C. C. A. 3); The Sao Vicente, 281 F. 111 (C. C. A. 2). If the jurisdiction of the court continues in effect until the judgment is satisfied, the parties who have thus voluntarily appeared and submitted to the jurisdiction are normally subject to its mandates, and the successful litigant is entitled to the fruits of the litigation. In Riggs v. Johnson County, 6 Wall. 166, 187, 18 L. Ed. 768, the court said:

"Jurisdiction is defined to be the power to hear and determine the subject-matter in controversy in the suit before the court, and the rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree. * * *

"Express determination of this court is, that the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied. Consequently, a writ of error will lie when a party is aggrieved in the foundation, proceedings, judgment or execution of a suit in a court of record. * * *

"Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." Central Nat. Bank v. Stevens, 169 U. S. 432, 18 S. Ct. 403, 42 L. Ed. 807; Bank of United States v. Halstead, 10 Wheat. 51, 6 L. Ed. 264.

In Pam-to-pee v. United States, 187 U. S. 371, 383, 23 S. Ct. 142, 147, 47 L. Ed. 221, the court approved the language of Taney, C. J., in Gordon v. United States, 117 U. S. 697, 702, saying:

"The award of execution is a part, and an essential part, of every judgment passed by a court exercising judicial power. It is no judgment, in the legal sense of the term, without it. Without such an award the judgment would be inoperative and nugatory, leaving the aggrieved party without a remedy. It would be merely an opinion, which would remain a dead letter, and without any operation upon the rights of the parties. * * * "

This execution is directed against the moneys held in the National City Bank of New York, also against debts owing to the government of Sweden by the Swedish American Line, and the testimony is that the debts represent advances made by the Swedish government.

But the question presented is whether execution may issue on this judgment against this sovereign power's property because the court acquired jurisdiction by expressed or implied consent. And does the jurisdiction of the court continue in effect until its judgment is satisfied even against this sovereign power, though a plea of immunity is interposed against such execution?

■■ The judgment is entered against Sweden, as a litigant under a name of its own selection, representing it to be a corporation. A judgment should be enforced against a debtor upon proof of the litigant's true identity. All concede that Kunglig Jarnvagsstyrelsen and the government of Sweden are one and the same. The Swedish government is in fact a governmental corporation. If a defendant appears in a suit by incorrect name and does not plead in abatement, and judgment is rendered against him, the judgment is fully binding upon him, and he may be connected with the judgment. Grannis v. Ordean, 234 U. S. 385, 34 S. Ct. 779, 58 L. Ed. 1363; B. & P. R. Co. v. Fifth Baptist Church, 137 U. S. 568, 11 S. Ct. 185, 34 L.

Ed. 784; Lafayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451.

■ But consenting to be sued does not give consent to a seizure or attachment of the property of a sovereign government. The clear weight of authority in this country, as well as that of England and Continental Europe, is against all seizures, even though a valid judgment has been entered. To so hold is not depriving our own courts of any attribute of jurisdiction. It is but recognizing the general international understanding, recognized by civilized nations, that a sovereign's person and property ought to be held free from seizure or molestation at all peaceful times and under all circumstances. Nor is this in derogation of the dignity owed to our courts.

■ When a sovereignty voluntarily appears in our court, it assumes the character of a private suitor. The Thekla, 266 U. S. 328, 45 S. Ct. 112, 69 L. Ed. 313. This role as a litigant has been, however, limited to litigating the controversy. An interesting article discussing this subject is found at page 566 of the American Journal of International Law, vol. 22. The courts have been reluctant to seize property of a foreign government even where the government has consented to the jurisdiction for the purpose of litigating a claim. The basis of this is that giving such consent to litigation does not thereby give consent to an indiscriminate seizure of the property to satisfy the judgment. A report of the committee of jurists of the League of Nations (1927), found at page 743 of the American Journal of International Law, vol. 21, considers the question of the competence of the courts in regard to foreign states. The French doctrine, established by the decision of the Court of Cassation in the case of Lambege & Ponget v. Spanish government, which was a suit for breach of contract for the sale of merchandise, decides that one who enters into a civil contract with a foreign state or sovereignty, implicitly agrees to abide by the civil competence and jurisdiction of the foreign courts, but the later French decisions draw a distinction between the public and private acts of a state, not, however, to the extent of permitting a seizure of state property in causes of action arising out of the acts regarded as private.[1] The German

[1] Balquerie c. Gouvernement Espagnol; Court of Appeal of Paris, January 7, 1825. Gouvernement Espagnol c. Lambege et Pujol, D. P. 1849, 1, 6. Veuve Caratier-Terrasson c. Direction Generale des chemins de fer d'Alsace-Lorraine (Dalloz), 1885, 1,341. Cour de Cassation of

court, in Von Hellfeld v. Imperial Russian Government,[2] refused to issue an execution to enforce a judicial decree and pointed out that, even though Russia consented to the jurisdiction and a counterclaim was interposed, it must be limited to the judicial determination of the question of law and stopped short of execution of the judgment. Italy limits the scope of sovereign immunity and permits seizure of property of a foreign government. This, however, rests upon a theory of reciprocity. The basis of a decree in the cited case appears to be that immunity may be granted only where the foreign sovereign will extend similar immunity to Italy.[3] In Switzerland, an attachment is considered proper, and it seems to be controlled by a statute permitting the enforcement of judgments of the Swiss Tribunal against foreign states.[4] In Re Suarez, [1917] 2 Ch. 131, the Bolivian minister in England was appointed administrator of an intestate estate in England. He was sued by one of the beneficiaries, waived his diplomatic immunity and submitted to jurisdiction. Judgment went against him; he refused to pay it, and, when an application was made for a writ of execution, he asserted his immunity. It was held, by Mr. Justice Eve that he was still entitled to claim his immunity at execution. A similar ruling is to be found in Re Republic of Bolivia Exploration Syndicate, Limited, [1914] 1 Ch. 139, where an action for damages was brought against directors of a defunct corporation for misfeasance in office. One of the directors claimed his privilege as secretary to the Peruvian Legation. The court said that no judgment or execution could be enforced or levied against him. See, also, In re The Tervaete (1922) Provate, 197, 203. It was held in The Parlement Belge, L. R. 5 P. D. 197, 207–214, that the courts of England had no jurisdiction under the laws of England to interfere with the property of a foreign sovereign, the court saying:

---

January 21, 1896 (Journal du Droit International Prive' 1896, p. 849); Societe Gostorg et Union des Republiques Socialistes. Sovieties c. Association France Export (Journal du Droit International Prive [1929], p. 406).

[2] Zeitschrift fuer Internationales Recht XX [1910] 416 (Translation in 5 American Journal of International Law, 490).

[3] Giurisprudenza Italiana, 1925, p. 271 (S. S. Capillo, a vessel of the United States government). See, also, Law enacted by Italian Senate August 30, 1925, reported in Rivista di Diritto Internazionale, vol. 1926, p. 159.

[4] Dreyfus v. Austrian Finance Ministry, rendered March 13, 1918 (Arrets du Trib, Federal Suisse, vol. 44, 1–49).

"The principle to be deduced from all these cases is that, as a consequence of the absolute independence of every sovereign authority, and of the international comity which induces every sovereign state to respect the independence and dignity of every other sovereign state, each and every one declines to exercise by means of its Courts any of its territorial jurisdiction over the person of any sovereign or ambassador of any other state or over the public property of any state which is destined to public use, or over the property of any ambassador. * * * "

In Duff Development Co., Limited, v. Government of Kelantan and the Crown Agents for the Colonies, Garnishees, [1923] 1 Ch. 385, House of Lords, [1924] A. C. 797, it was held that an execution could not be taken out on the arbitrator's award although by statute that award had the effect of judgment. One Law Lord dissented.

The Supreme Court, in Beers v. Arkansas, 20 How. 529, 15 L. Ed. 991, pointed out that permission to be sued may be voluntary on the part of the sovereignty, and it may prescribe the terms and conditions on which it consents to be sued and the manner in which the suit may be conducted and may withdraw its consent whenever it may suppose that justice to the public requires it. Our courts have recognized that jurisdiction may be conferred for the purpose of the rendition of a verdict and entry of judgment only. Memphis & C. Railroad Co. v. Tennessee, 101 U. S. 337, 25 L. Ed. 960; Carter v. State, 42 La. Ann. 927, 8 So. 836, 21 Am. St. Rep. 404; Westinghouse Electric Co. v. Chambers (1915) 169 Cal. 131, 145 P. 1025. In such cases, when judgment has been rendered and the liability judicially ascertained, the power of the courts ends and the sovereign is at liberty to determine for itself whether or not to pay the judgment. In Oliver American Trading Co. v. Mexico, 5 F.(2d) 659, 667, this court, in vacating an attachment issued against the government of Mexico, said:

"The property sought to be reached in this country is the public property of Mexico, and is movable property, which that government holds for public purposes, and, being such, it is entitled to the same immunity as a sovereign, or an ambassador, or a ship of war, and for the same reason. The exercise of such jurisdiction by the courts of this country is inconsistent with the independence and sovereignty of Mexico."

See, also, French Republic v. Inland Navigation Co. (D. C.) 263 F. 410.

■ In Virginia v. West Virginia, 246 U. S. 565, 38 S. Ct. 400, 62 L. Ed. 883, the Supreme Court had original jurisdiction, pursuant to article 3, § 2, cl. 2, of the Constitution, and the question was presented as to the means of enforcing a decree of that court. It was a case between two states. By ratifying the Constitution, these states forever waived their sovereign immunity and yielded to the jurisdiction of the Supreme Court so far as it concerns actions brought against them by other sovereign states. The court had full jurisdiction, and the state retained no right to object to being sued. Rhode Island v. Massachusetts, 12 Pet. 657, 9 L. Ed. 1233. The Supreme Court held that such a judgment could be followed by execution against a state, and this, for the reason that it possessed none of the attributes of sovereignty so far as the suit by a sister state is concerned. But this is not a precedent for holding that an execution may issue against property of a foreign state. The national courts have always respected the immunity of a foreign state from coercive jurisdiction, and the Constitution, art. 3, § 2, and U. S. Code, title 28, § 41 (28 USCA § 41), which gives the District Court jurisdiction of actions between the citizens of a state and foreign states, is necessarily limited by the right of the sovereign state to plead immunity. The Pesaro, 255 U. S. 216, 41 S. Ct. 308, 65 L. Ed. 592.

■ The Swedish minister has made the declaration, in the plea of immunity, that these properties "are public funds of the kingdom of Sweden owned by it in its capacity as a sovereign and employed by it for public governmental functions." Appellant's counsel refers to these funds as "apparently deposited there for the purpose of meeting payments on the Swedish national debt," and the testimony is that the moneys owed by the Swedish American Line represent advances made by the Swedish government for the purpose of building up its merchant marine. The declaration of the minister to Sweden is sufficient to characterize the funds as for governmental use. Oliver American Trading Co. v. Mexico, supra; The Pesaro, supra. It is not essential to the jurisdiction of the court to determine a controversy that it possessed the power of execution or be able to carry into effect the relief granted in the determination of the litigation. Old Colony Trust Co. v. Com'r of Int. Rev., 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; Fidelity Nat. Bank v. Swope, 274 U. S. 123, 47 S. Ct. 511, 71 L. Ed. 959.

As indicative of the policy of Sweden toward the doctrine of sovereign immunity, a letter is referred to, written by an officer of Sweden, answering an inquiry of the League of Nations. The position of Sweden, there set forth, recognizes that the whole subject of immunity is one that should be made the subject of an international convention. In referring to the case law of Sweden, it is stated that the Swedish courts have displayed a tendency not to recognize such immunity in a case where the lawsuit arises out of the commercial activity of the foreign state, but nothing is said as to a policy which would permit forcible execution against public property of the state. The railroads are a part of the public property, and their operation is a governmental enterprise. Oliver American Trading Co. v. Mexico, supra.

■ Whether a sovereign government permits itself to be sued in its own courts has no bearing on whether it should be subject to suits in the courts of another jurisdiction. Murray v. Wilson Distilling Co., 213 U. S. 151, 29 S. Ct. 458, 53 L. Ed. 742.

■ Such weight of international authority should be respected as establishing the common consent of civilized nations in the formation of the international rule of law. The Paquete Habana, 175 U. S. 677, 20 S. Ct. 290, 44 L. Ed. 320; West Rand Co. v. Rex, L. R. [1905] 2 K. B. 391.

It is regrettable that Sweden may thus escape payment of a valid judgment against it. Appellant has been misled in the belief that this plaintiff was a separate entity— apart from the government—and now, when a sufficient number of years has passed making possible a plea of limitation or laches against suing in Sweden (see letter to the League of Nations), appellee appears and pleads its sovereign immunity. Whatever may be appellant's remedy to collect its valid judgment, it should not be necessary to resort to further litigation. It is hoped that the judgment of our courts will be respected and payment made by the Swedish government. But we are required to affirm the order appealed from.

Order affirmed.