**ERVIN v. QUINTANILLA et al.**
No. 8890.

Circuit Court of Appeals, Fifth Circuit.
Nov. 18, 1938.

936

Palmer Pillans, of Mobile, Ala., and Frederick H. Wood, of New York City, for appellant.

Gessner T. McCorvey, of Mobile, Ala., and Manuel C. Gonzales, of San Antonio, Tex., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, as libellant in a cause petitory and of possession, civil and maritime, having procured process of seizure against, and caused to be seized, a steam vessel of Mexican registry, the San Ricardo, then in the port of Mobile, Alabama, set on foot proceedings to take the depositions of her crew. The United States of Mexico, expressly declining to submit itself to the jurisdiction of the court, appeared specially to suggest to the court; that it was making representations through diplomatic channels to the Government of the United States of America that the San Ricardo was a public vessel, in the possession and service of the United States of Mexico; and that it was requesting the United States to make, through the Attorney General, an appropriate suggestion of immunity from

suit, and that the proposed taking of testimony be delayed pending the result of these representations.

The Court, declining to comply with the suggestion for delay in the taking of the testimony, the appellee, "reserving all of his favors, privileges, immunities and exceptions, and in no manner submitting himself or the Republic of Mexico to the jurisdiction of this honorable court", made a special appearance for the purpose of suggesting, and wherein he suggested, to the court that "at the time of the filing of the libel and the seizure of the San Ricardo she was a Mexican vessel flying the flag, and documented under the laws of, the Republic of Mexico, and in the possession of said Republic of Mexico as a public vessel, under and by virtue of a decree of expropriation of March 18, 1938, and acts of possession taken by the Mexican Consul on March 23, 1938 for and on behalf of the Republic of Mexico;" that the said vessel being a public vessel of a friendly government and in its possession is immune from seizure and from the exercise of jurisdiction over it by this Court; and that in recognition of the immunity and of its want of jurisdiction the Court should vacate the seizure, dismiss the libel and release the vessel.

Appellant by motion and exceptions sought to strike the immunity suggestion on the ground that if immunity had ever existed, it had been waived by what in effect was a general appearance of the Republic of Mexico in (a) suggesting a stay of the taking of depositions; (b) putting in issue by its suggestion, not merely the possession, but the right and title of the Republic of Mexico, and (c) praying not alone for the dismissal of the res from, but a dismissal of the libel as well.

On practically undisputed evidence the District Judge found the facts as follows: (1) That the steamship San Ricardo on March 5, 1938, complying with orders from the vessel's owner, the Compania Naviera, sailed from Tampico, Mexico, to the port of Mobile, Alabama, for the purpose of repairs, where it arrived on the 9th, and was delivered to the Alabama Drydock and Shipbuilding Company. (2) On March 18, 1938, Lazaro Cardenas, President of Mexico, issued a decree, providing "There are hereby declared as expropriated * * * vessels of all kinds * * * Compania Naviera San Ricardo, S. A. * * * insofar as the same may be necessary, in the judgment of the office of the Secretary of Economia Nacional for the discovery, securing, transportation, storage, refining and distribution of the products of the petroleum industry." (3) This decree was published and became effective on March 20th and the Secretary of State at once sent written orders and instructions by air mail to the Consul of Mexico stationed at New Orleans, authorizing and directing him to proceed at once to Mobile and take physical possession of the San Ricardo in the name of that government, and to do all things necessary to accomplish such possession; that is to say, to give notice to the officers and men of the vessel; that the ship had been taken over by the Republic of Mexico; that it was no longer under the control of the Compania Naviera; to make arrangements to employ the officers and men then in charge, if they were willing to accept service under the Republic, otherwise to employ others; and to enter into such contracts as may be necessary for the making of needed repairs to the vessel. (4) The Consul proceeded to Mobile and took possession in accordance with his instructions. He received the allegiance of the Master and men, paid the wages, arranged for the making of repairs, and peaceably, but fully and completely, and in every way possible, took possession of the vessel for the Republic of Mexico. He did this by his own acts and through the Master and crew, who willingly came over, expressing their willingness to serve and serving the Republic on the vessel. (5) The Alabama Drydock Company on its part, accepted the vessel and made repairs on it as in the possession and control of the Mexican government. (6) The Master advised the manager of the Company of the taking over, and of his attornment to the Republic of Mexico as in possession and control of the vessel, and that the relations between him and the company were at an end. The Consul paid in full the salaries of the officers and the wages of the men from March 19 to March 31, and furnished the necessary funds to the captain for the purchase of provisions and supplies. (7) When she came into port the San Ricardo was not in the possession of the Mexican government, but in that of the Compania Naviera, a Mexican corporation, and remained in that possession from March 9, to March 23, 1938. On March 23 the vessel was taken into the possession of the Mexican government and was in that possession and control on April 2, 1938, the date of her seiz-

ure by the United States Marshal, being repaired by or at the expense of the Mexican government to be used for public purposes by that government.

Upon these facts he concluded (1) that the claim of immunity had not been waived, but had been properly presented and pressed; (2) that it had been completely maintained, by the undisputed proof that the steamship San Ricardo at the time it was seized under' process issued out of the court was a public vessel in the service of, and in the actual possession of the Republic of Mexico, a friendly sovereign power, and immune from seizure under process of the court. He declined to consider questions of title to the vessel as between the company and the Mexican government, as not a matter for the consideration of the court, since the United States being at peace with Mexico, that government has the right to claim immunity from and against seizure of its vessels in American territorial waters.

So concluding, he sustained the claim of immunity and dismissed the libel for want of jurisdiction.

Here appellant makes two points against the order and decree; (1) that the claimed immunity was waived; (2) that it was not sustained.

On the point of waiver appellant urges that though claiming to make a special appearance limited to the suggestion of immunity, the Republic of Mexico in fact made a general appearance, thus waiving the right it had to claim immunity, by (a) asking affirmative relief in the action, that is, that the taking of depositions be postponed; (b) by appearing and asking affirmative relief for a defendant, the Master of the ship against whom the action runs in personam; (c) by tendering along with the suggestion of immunity an issue going to the merits, towit, an issue as to the title and ownership of the vessel; and (d) by praying that the libel be dismissed.

On the point that immunity was not established appellant insists that there was a failure of proof that the vessel was a public vessel and in the possession of the Republic of Mexico for public use at the time the action was commenced.

We of course agree with appellant that a sovereign may waive his claim of immunity and subject himself to a jurisdiction which, but for his submission, he would be immune from. He may do this by a general appearance, or by acts or conduct inconsistent with the claim of a special appearance made for the purpose, alone, of raising the jurisdictional question. Cases of that kind are The Sao Vicente, 3 Cir., 295. F. 829; Dexter & Carpenter v. Kunglig, 2 Cir., 43 F.2d 705. But we agree with appellees that the appearance and proceedings on the part of the Republic of Mexico below were conducted throughout with the specific intent for the specific purpose, and with the result alone of presenting a claim of immunity from the jurisdiction of the court. We agree with them that nothing that it or its representatives did was in any manner inconsistent with this intent and purpose, or could be reasonably construed as or tortured into a general appearance, or an invocation of the jurisdiction of the court. We agree that the District Judge was right in holding that the immunity was properly claimed, and the claim was not waived.

Courts have rightly refused to permit persons or sovereigns not subject without their consent to the jurisdiction of the court, to come in and out of a court at will. They have thus uniformly held that where jurisdiction has been invoked or has been submitted to by a general appearance, there can be no later assertion of immunity and withdrawal. Porto Rico v. Ramos, 232 U. S. 627, 34 S.Ct. 461, 58 L.Ed. 763; Kingdom of Roumania v. Guaranty Trust, 2 Cir., 250 F. 341, Ann.Cas.1918E, 524 and cases cited. They have also held that whether there has been a general appearance or submission to the jurisdiction is to be determined by the nature of the acts done and the intent with which they were done, giving effect in this determination, of course, to the principle that actions are intended to have their usual and natural consequences, and that a litigant will not be heard to say that he did not intend the natural consequences of clear and unequivocal acts.

Perhaps as good a statement as any of the principle is that in Grable v. Killits, 6 Cir., 282 F. 185, 195:

"The question of general appearance is one of intent, actual or implied, and where the whole purpose of defendant's application to the court is to set aside an order because it has been made without personal jurisdiction over him, the conduct which will make the application unavailing and destroy its basis must be clear and unequivocal."

C/f Salmon Falls Mfg. Co. v. Midland Fire & Rubber Co., 6 Cir., 285 F. 214; Citizens' Savings & Trust Co. v. Illinois Central, 205 U.S. 46, 27 S.Ct. 425, 51 L.Ed. 703; Dahlgreen v. Pierce, 6 Cir., 263 F. 841. C/f Kingdom of Roumania v. Guaranty Trust, supra.

The first appearance, to advise the court of the pendency of diplomatic representations, and to suggest that, pending same, depositions be not taken in the cause, was not a general appearance; indeed, it was within the authorities, perhaps not effective as an appearance at all. C/f Ex parte Muir, 254 U.S. 522, 41 S.Ct. 185, 65 L.Ed. 383; The Pesaro, 255 U.S. 216, 41 S.Ct. 308, 65 L.Ed. 592; Compania Espanola De Navegacion, Maritima, S. A. v. The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L.Ed. 677. It was more in the nature of a suggestion amicus curiæ which the District Court was at complete liberty to and which it did disregard. Nothing in this suggestion was or could be taken as an invocation of, or a submission to, the jurisdiction of the court. All that it amounted to was an informal suggestion that, pending the diplomatic representations, the matter should proceed no further in the court.

Equally without merit is appellant's position that Luis Quintanilla, the authorized appearer for the Republic of Mexico to present the claim of immunity, appeared on behalf of the Mexican Government for the Master of the ship. No such appearance was made by him. The appearance that he made was "clearly and solely for the purpose of respectfully challenging the jurisdiction of this court, and presenting this plea of immunity and in no way, except for the purpose hereinafter set forth, submitting himself or the Republic of Mexico, to the jurisdiction of this honorable court." There was neither plea nor prayer in that appearance for Captain Medina. The only mention made of him was as Master of the vessel for the Republic of Mexico.

Finally, it is a mistaken reading of the appearance to construe it as tendering an issue of title, or invoking the jurisdiction of the court, merely because it relates the possession to the Mexican government's decree of expropriation and asks that the libel be dismissed and the seizure of the San Ricardo be vacated and set aside.

As to the expropriation decree, this was set forth only in subordination to and in support of its claim of immunity as one of the acts under and by which possession was taken. If it be considered that it was necessary to its claim of possession to set this out, its setting out would certainly put nothing in issue except possession. Equally if it were considered as unnecessary to support that claim, it would put nothing in issue but possession, for it would then be surplusage, to be disregarded as such. In our opinion it was entirely proper for the appearer in explanation of the possession for public use to relate it to the expropriation decree. For sovereigns, as well as individuals, should, and most do, entertain a decent respect for the opinions of mankind. It is not only permissible therefore, but reasonable and wise for a sovereign, asserting immunity from jurisdiction in the courts of a friendly power, to state that the possession he relies on has a fair and legal basis, is not an act of rapine or spoliation. Certainly a sovereign does not lose his immunity and submit to jurisdiction merely by alleging, in connection with his claim of possession, that he maintains that possession under a claim of right for public use; that the possession is not being merely wrongfully withheld by persons purporting, but having no authority, to act for him. Indeed, under the American doctrine that a claim of immunity must be supported by something more than the mere assertion of it, The Pesaro, 255 U.S. 216, 41 S.Ct. 308, 65 L.Ed. 592; The Attualita, 4 Cir., 238 F. 909; Compania Espanola De Navegacion, Maritima, S. A. v. The Navemar, supra; The Carlo Poma, 2 Cir., 259 F. 369; Long v. The Tampico, D.C., 16 F. 491; Berizzi Bros. Co. v. The Pesaro, 271 U.S. 562, 563, 46 S.Ct. 611, 70 L.Ed. 1088; The Davis, 10 Wall. 15, 19 L.Ed. 875; Briggs v. Light Boats, 11 Allen, Mass., 157; immunity from jurisdiction will be denied a foreign sovereign where the possession relied on was taken or is being maintained in breach of our laws, The Santissima Trinidad, 7 Wheat. 283, 5 L.Ed. 454; The Apollon, 9 Wheat. 362, 6 L.Ed. 111; The Appam, 243 U.S. 124, 37 S.Ct. 337, 61 L. Ed. 633, Ann.Cas.1917D, 442, and the assertion of the immunity of our own government when advanced in a suit over a res will be inquired into sufficiently to determine whether the possession is really that of the government, or is that of some person purporting to be, but in fact not lawfully acting for it. United States v. Lee,

106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171; United States v. Jardine, 5 Cir., 81 F.2d 745.

As to the prayer that the libel be dismissed, certainly no invocation of jurisdiction can be made out of this. The libel was in rem, and the dismissal of the ship as not subject to the jurisdiction in fact dismissed the libel. The suggestion, therefore, that the libel be dismissed added nothing to the suggestion that the seizure be vacated and the ship dismissed. In The Pesaro, 255 U.S. 216, 41 S.Ct. 308, 65 L.Ed. 592, it is said of a decree dismissing a ship, that it is final and appealable, that it "ends the suit as effectually as if it formally dismissed the libel."

On the plea of immunity itself, appellant stands no better, for in the face of the undisputed evidence as to the taking of physical possession of the ship by the acts of the Republic of Mexico for public use, he has nothing to stand on except his contention that such possession cannot be first taken in our waters, and this contention will not do.

We may assume, though The Jupiter, No. 1, 1924, Probate 231; The Jupiter, No. 2, 1925, Probate 69 and The Cristina, 59 Lloyd's List L.R. 43; 107 L.J.P. 1,[1] both cited with approval in Compania Espanola De Navegacion Maritima, S. A. v. The Navemar, 303 U.S. 68, 58 S.Ct. 432, 82 L. Ed. 667, seem to me to have greatly shaken what is said about it by appellant, and in some of the American cases, that the distinction between American and English law is that English law recognizes and concedes immunity from jurisdiction as to vessels upon the mere assertion of claim by a sovereign power, without proof of possession, while our law requires that proof. This, if it still exists, is the only difference between the two jurisdictions. The difference appellant sees, that under American law, in order to immunity, possession for public use by a friendly foreign power must have begun before the ship entered our ports, though under English law this is not necessary, finds no support whatever in any decided case, English or American.

Appellant's reliance on Marshall's opinion in The Exchange, 7 Cranch 116, 3 L. Ed. 287, as holding this, is not, we think, at all well placed. For while there is general language which, taken out of its context and divorced from the facts of that case, might furnish appellant some comfort, that language was used in and of a case where the possession had begun and the public character had become fixed, before entry, and must necessarily be read and given effect upon the facts of the case the opinion dealt with. C/f Lord Wright's discussion in The Cristina. No case has been cited, none can be found in any jurisdiction, holding that possession of a ship, taken by a friendly foreign power in the waters of another government, peaceably and without the exercise of force, involving neither breach of its peace nor other violation of the municipal laws of that government, is ineffective to support the foreign government's immunity.

It is of course true that no foreign government may, in breach of our laws, or against our consent, exercise any act of sovereignty here.[2] It is not true that a foreign government may not peaceably, and without breach of any of our laws, take physical possession of a ship of one of its nationals while in one of our ports. C/f The Cristina; Compania Espanola De Navegacion Maritima, S. A. v. The Navemar, supra. The taking possession in this case was not an act of sovereignty in the sense appellant means, the exertion of superior force, in order, without our consent, to violate our sovereignty or override the operation of our laws. It was merely a series of physical acts done by the consular representative of Mexico in its behalf, and of acceptance of those acts by the Master and the crew, and by the shipbuilding company, all of this accomplished peaceably, completely without disorder, and entirely in subordination to the sovereignty and laws of the United States. If, instead of an expropriation, there had been a renting or a transfer in Mexico, from a Mexican company to the Mexican government, and pursuant to papers exchanged there the government had taken possession, as it did here in the port of Mobile, we think no one could be heard to complain that, because the vessel was under private ownership when it came into our waters, the attempt of the Republic of Mexico to take possession of the ship was an act of

---

[1] The Cristina, The Law Quarterly Review, Vol. LIV., July, 1938, No. 215, p. 339 et seq.—Lauterpacht.

[2] Oppenheim, International Law, Vol. 1, Secs. 125–128; United States v. Deutsches Kalisyndikat Gesellschaft, D. C., 31 F.2d 199; The Apollon, 9 Wheat. 362, 6 L.Ed. 111.

sovereignty not permissible to be performed here, and it could not therefore claim immunity. Since the right and title of the government is not in issue, but merely its possession, we think it clear that the possession taken here, pursuant to an expropriation in Mexico, is no different in incidents, quality and effect from one taken pursuant to a voluntary transfer.

Whether the maintenance of this view as to taking possession of ships in our waters will, as appellant maintains, result in its being extended to things seized on land, so as to lead to the imagined situation of the property of nationals of a foreign country being forcibly seized from them in this country under the authority of a foreign expropriation decree, we need not seriously consider, for it is not before us.

It may be that since a vessel is considered constructively a part of the territory of the sovereign whose flag it flies, and is subject on the high seas or in territorial waters to the jurisdiction of that sovereign, The Navemar, 2 Cir., 90 F.2d 673, 676, and cases cited (c/f The Cristina, supra), the taking possession of a ship in navigable waters presents an entirely different question from the taking possession of property on land. It is not necessary, however, for us to so decide.

In United States v. Lee, 106 U.S. 196, 217, 1 S.Ct. 240, 258, 27 L.Ed. 171, rejecting an argument of this nature when urged in support of, instead of against, immunity from suit, the court said:

"In this connection many cases of imaginary evils have been suggested, if the contrary doctrine should prevail. * * * Hypothetical cases of great evils may be suggested by a particularly fruitful imagination in regard to almost every law upon which depends the rights of the individual or of the government, and if the existence of laws is to depend upon their capacity to withstand such criticism, the whole fabric of the law must fail."

All that is here for decision is whether the Republic of Mexico may have immunity as to this ship, a Mexican ship owned by a Mexican company, documented in Mexico and flying the Mexican flag, when as here, she has taken peaceable possession of it in our waters through her lawful agents and representatives, and properly

presents and presses her claim based upon that possession.

We think the question is conclusively answered in the affirmative, both upon reason and authority. In the last, and therefore the most authoritative statement of the Supreme Court in a case where the claim was very much like this, the Court said:

"The District Court concluded, rightly we think, that the evidence at hand did not support the claim of the suggestion that the Navemar had been in the possession of the Spanish government. The decree of attachment, without more, did not operate to change the possession which, before the decree, was admittedly in petitioner. To accomplish that result, since the decree was in invitum, actual possession by some act of physical dominion or control in behalf of the Spanish government was needful, The Davis, 10 Wall. 15, 19 L.Ed. 875; Long v. The Tampico, D.C., 16 F. 491, 493, 494; The Attualita, supra; The Carlo Poma, 2 Cir., 259 F. 369-370 reversed on other grounds, 255 U.S. 219, 41 S.Ct. 309, 65 L.Ed. 594, or at least some recognition on the part of the ship's officers that they were controlling the vessel and crew in behalf of their government. Both were lacking, as was support for any contention that the vessel was in fact employed in public service. See Long v. The Tampico, supra, pages 493, 494, cf. Berizzi Bros. Co. v. The Pesaro, supra."[3]

The point appellant makes is not only not decided in this case as he contends for it, it is not even discussed there. On the contrary, in the above quotation it is definitely declared that some recognition on the part of the ship's officers that they were controlling the ship in behalf of their government would be sufficient. Here there is not only full proof of this, but complete proof that they were working under and receiving their pay from the government, and that the drydock company, which had the ship for repairs, held it as in the possession of, and was working on it for and being paid by, the Mexican government.

Other authorities which may be cited in support of the judgment below are: Tucker v. Alexandroff, 183 U.S. 424, 22 S.Ct. 195, 46 L.Ed. 264; Briggs v. Light Boats, 11 Allen 157, 93 Mass. 157; The Roseric,

---

[3] Compania Espanola De Navegacion Maritima, S. A., v. The Navemar, 303 U. S. 68, 75, 58 S.Ct. 432, 435, 82 L.Ed. 667.

942

D.C., 254 F. 154; Berizzi Bros. Co. v. S. S. Pesaro, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088; The Exchange, 7 Cranch, 116, 3 L.Ed. 287; United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134; Mali v. Keeper of the Common Jail, 120 U.S. 1, 7 S.Ct. 385, 30 L.Ed. 565.

The decree was right. It is affirmed.