### GOVERNMENT OF FRANCE v. IS-BRANDTSEN-MOLLER CO., Inc.

District Court, S. D. New York.

Jan. 15, 1943.

632

Haight, Griffin, Deming & Gardner, of New York City, for libellant.

Bigham, Englar, Jones & Houston, of New York City, for respondent.

RIFKIND, District Judge.

Respondent moves (1) to dismiss the above entitled action upon the ground that it had not been properly commenced prior to the severance of diplomatic relations be-tween this country and France and could not be commenced thereafter; and (2) to strike from the files of the clerk of this court a verification of the amended libel, signed by the former French Ambassador to this country, upon the ground that it was filed on November 9, 1942, on which date the Government of France did not have access to the courts of this country.

This is an action to recover demurrage and other charges alleged to be due the Government of France. On October 1, 1941, a libel verified by the proctor for the libellant was filed; and an amended libel, verified in the same manner, was filed on March 8, 1942. Thereafter, respondent moved under Rule 12 of the Admiralty Rules of this court for a stay of all pro-ceedings pending the procurement of per-sonal verification of the libellant. This motion was granted; and in the order en-tered thereon, on October 30, 1942, it was provided that if the personal verification of the libellant was not filed on or before November 30, 1942, the action was to be dismissed.

A verification which purports to have been signed and sworn to by the French Ambassador on October 3, 1942, was filed in this court by proctors for libellant on November 9, 1942, the day after France had severed diplomatic relations with this country and had recalled its ambassador. By letter dated November 18, 1942, the Secretary of State notified the proctors for the respondent that on November 9, 1942, Mr. Gaston Henry-Haye was not the French Ambassador to this country and, because of the German occupation of all of France, the Government of Metropolitan France was no longer recognized by this country. In a telegram dated the same day the Secretary of State informed the proctors for the libellant that at the present time the United States did not recognize the existence of any Government of France. On November 8, 1942, General Ruling No. 11 of the Treasury Department promulgated under the authority of Executive Orders No. 8389 and 9193 of 1942, 12 U.S.C.A. § 95 note, 50 U.S.C.A. Appendix § 6 note and the Trading With the Enemy Act, 50 U.S.C.A. Appendix §§ 1–31 was amended so as to include in the term "enemy terri-tory" all the territory of continental France. It is apparent, therefore, that the verifi-cation in question was filed after diplomatic relations with France had been severed, the French Ambassador's authority had

ceased, the United States had withdrawn its recognition of the French Government and its territory had become enemy territory.

Upon the basis of these facts the respondent contends that this action had not been properly commenced and the court had not acquired jurisdiction because the Government of France, being a sovereign body, had failed to waive its immunity before the severance of diplomatic relations and was powerless to do so thereafter.

■ It is undoubtedly true that a foreign sovereign is immune from suit in our courts. Guaranty Trust Co. v. United States, 1938, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224; Dexter & Carpenter, Inc., v. Kunglig Jarnvagsstyrelsen, 2 Cir., 1930, 43 F.2d 705, certiorari denied 282 U.S. 896, 51 S.Ct. 181, 75 L.Ed. 789.

In a proper case the courts will take judicial notice of such immunity. Puente v. Spanish Nat. State, 2 Cir., 1940, 116 F. 2d 43, certiorari denied 314 U.S. 627, 62 S.Ct. 57, 86 L.Ed. 504.

However, where it is not apparent that there is sovereign immunity, it must be claimed by the duly accredited representative of the sovereign state involved. In re Muir, 1921, 254 U.S. 522, 41 S.Ct. 185, 65 L.Ed. 383; The Gul Djemal, 1924, 264 U.S. 90, 44 S.Ct. 244, 68 L.Ed. 574.

■ It is also undoubtedly true that a foreign sovereign, recognized by our Government, may sue in the courts of the United States. Guaranty Trust Co. v. United States, supra; Land Oberoesterreich v. Gude, 2 Cir., 1940, 109 F.2d 635, certiorari denied 311 U.S. 670, 61 S.Ct. 30, 85 L.Ed. 431; Kingdom of Roumania v. Guaranty Trust Co., 2 Cir., 1918, 250 F. 341, Ann. Cas.1918E, 524, certiorari denied 246 U.S. 663, 38 S.Ct. 333, 62 L.Ed. 928. And it may waive its immunity and consent to be sued. Ervin v. Quintanilla, 5 Cir., 1939, 99 F.2d 935, certiorari denied 306 U.S. 635, 59 S.Ct. 485, 83 L.Ed. 1037; People of Porto Rico v. Ramos, 1914, 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 763; Dexter & Carpenter v. Kunglig Jarnvagsstyrelsen, supra.

■ However, immunity against suit is a defense which is available to the sovereign state and its duly accredited representatives only. It cannot be asserted by a private party litigant. Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 2 Cir., 1929, 32 F.2d 195, certiorari denied 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629. See, The Schooner Exchange v. M'Faddon et al., 1812, 7 Cranch 116, 3 L.Ed. 287.

■ The foregoing propositions are well established. They are recited here as background for the novel contention advanced by respondent that because libellant is a sovereign and immune to suit, it can not commence a suit unless and until it has waived its immunity through its ambassador. None of the authorities called to my attention supports this view of libellant's capacity to sue. The reliance of respondent upon Colombia v. Rothschild, 1 Simons 106 is misplaced. The significance of that case has been much contracted by the English courts, United States v. Wagner, [1867] L.R. 2 Ch. 582 and its holding repudiated in this country. The Republic of Mexico v. De Arangoiz, 1856, 5 Duer, N.Y., 634. See also State of Yucatan v. Argumedo, 1915, 92 Misc. 547, 157 N.Y.S. 219. In the last cited case the verification of a complaint by attorneys for a sovereign plaintiff was expressly approved. To the same effect is Republic of Mexico v. Arrangoiz, 1856, 5 Duer, N.Y., 643.

■ This action was properly commenced prior to the severance of diplomatic relations between France and the United States by the filing of a libel duly verified by the proctor for the libellant in accordance with the provisions of Rule 12 of the Admiralty Rules of this court. It was not a pre-requisite to the commencement of this action that the personal verification of the libellant be obtained. However, Rule 12 afforded the respondent the right to move for a stay of all proceedings until the procurement of such personal verification. This the respondent did and the action was stayed, but it was not dismissed, and it was pending when, on November 8, 1942, diplomatic relations were severed. From that day to the present time the United States has recognized no Government of France. This is evident from the two communications from the Secretary of State and the regulations of the Treasury Department referred to above. Accordingly, on November 9, 1942, the Government of France did not have access to our courts. Guaranty Trust Co. v. United States, 1938, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224.

■ Furthermore, since November 8, 1942, the Government of France has been an "enemy alien" within the purview of

the Trading With the Enemy Act, 50 U.S. C.A. Appendix §§ 1–31, and as such it is precluded from suing in our courts. Ex parte Colonna, 1942, 314 U.S. 510, 62 S.Ct. 373, 86 L.Ed. 379. It follows, therefore, that on November 9, 1942, neither the Government of France nor anyone acting on its behalf had power to file in this court the verification of the French Ambassador.

■ However, that does not mean that the action abates or must be dismissed. It means that the action is suspended until France is no longer an "enemy alien" and a Government of France is again recognized by the United States. This is the rule applicable to actions commenced by enemy aliens. Stumpf v. A. Schreiber Brewing Co., D.C.W.D.N.Y. 1917, 242 F. 80; Plettenberg, Holthaus & Co. v. I. J. Kalmon & Co., D.C.S.D.Ga. 1917, 241 F. 605; Rothbarth v. Herzfeld, 1917, 179 App. Div. 865, 167 N.Y.S. 199, affirmed 223 N.Y. 578, 119 N.E. 1075.

And it should also apply to actions which were properly commenced by foreign Governments prior to such Governments' loss of recognition by this country. To hold otherwise would do violence to the spirit of the rule enunciated by the Supreme Court in The Sapphire, 1871, 78 U.S. 164, at page 168, that: "The reigning Emperor, or National Assembly, or other actual person or party in power, is but the agent and representative of the national sovereignty. A change in such representative works no change in the national sovereignty or its rights. The next successor recognized by our government is competent to carry on a suit already commenced and receive the fruits of it." See Republic of China v. Merchants' Fire Assur. Corp. of N. Y., 9 Cir., 1929, 30 F.2d 278.

■ The motion to dismiss is denied. The motion to strike from the files of this court the verification of the French Ambassador filed on November 9, 1942, is granted. In view of the changed circumstances, however, the libellant's time to file the verification in question or the verification of any other accredited representative of the Government of France is extended until sixty days after the date upon which a French Government is again recognized by the United States. This, of course, is without prejudice to any action which the Alien Property Custodian may see fit to take.

Settle order on notice.